PATRICK H. FORD v. JACOB M. DICKINSON, Receiver of CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, and ISMERT-HINCKE MILLING COMPANY, Appellants.

Division One, December 20, 1919.

1. **NEGLIGENCE: Railway Track: Dangerous Proximity to Posts.** The mere construction of a railroad track so close to an iron post as to be inherently dangerous to a brakeman riding on the side of a box car is not, regardless of conditions, negligence. It is error to instruct the jury that the construction of an iron post, to support the roof of a shed, used by a milling company in unloading wheat from cars, in such close proximity to the railroad track as to be dangerous to a brakeman on the side of the car, of itself alone constitutes negligence, there being no showing of sufficient ground under the shed for wider space between the post and track or that it was practicable or feasible for the milling company to have allowed wider space.

2. ————: **Defective Track and Dangerous Proximity to Post: Inconsistent Allegations: Concurrent Acts.** A petition is inconsistent which alleges that the location of an iron post to support a shed, used for unloading cars hauling wheat to a mill, so close to the railroad track that a brakeman could not ride safely on the side of the car, was the proximate cause of his injury, and which also alleges that the proximate cause of his injury was a low place under the rail which caused the car to swerve towards the post; and where both acts of negligence are submitted to the jury, by one instruction fixing liability on the milling company because of the dangerous proximity of the post to the rail, and by another fixing liability on the railroad company because of the defect in the rail, a verdict against both cannot stand. In such case the petition should either allege that the two acts of negligence were con-

current and operating together caused the injury, or they should be alleged, in the alternative, that one or the other caused the injury, and the instructions be drawn accordingly.

3. ————: Post Near Track: Assumption of Risks: Warning. A brake-man does not assume a risk of which he is totally ignorant and cannot ascertain in the exercise of ordinary care and prudence, and where such are the facts it is the duty of the company to warn him of the danger. Where the railroad track was so close to an iron post erected to support a shed, used by a milling company, as to be dangerous, the brakeman was not acquainted with the situation, and as the car approached he looked along the track and concluded it was safe for him to ride on the side of the car, it was the duty of the railroad company to warn him of the danger, the hazard being exceptional.

4. ————: Proximity of Track to Post: Liability of Railroad. If a railroad track is negligently maintained dangerously near to an iron post in a milling shed, the railroad company which retains direction and control over it is liable for damages for injury to a brakeman riding on the side of a car; and it is negligently maintained, if it is practicable and feasible to maintain the track a sufficient distance from the post to remove the danger; and if the railroad company does not have sufficient control to eliminate the danger, it can either require the milling company to do so, or cease to haul cars into the shed.

5. ————: ————: Liability of Milling Company: Latent Perils. A milling company which maintains a shed for unloading cars of wheat is liable for all latent or concealed perils, maintained by it, to brakemen handling the cars; if it maintains an iron post, erected to support the shed, so close to the railroad track as to be dangerous to brakemen riding on the ladder of passing cars, and the danger is not so open or obvious that a brakeman, by ordinary care in the discharge of his duties in the customary way, will discover it, it is liable for his injuries caused by coming in contact with the post as the car passes.

6. ————: Interstate Employment: Misjoinder: Waivers. The petition charged both defendants, a railroad company and a milling company, with common-law liability, and the milling company contends that the cars of wheat which the plaintiff brakeman was engaged in switching at the time he was injured were interstate shipments, that by reason thereof he was in interstate commerce, and that the railroad company's liability is governed by the Federal Employer's Liability Act and its own by the common law, and that therefore there was a misjoinder of defendants and of causes of action. *Held*, that if the milling company had a right to raise the question, it waived it by pleading over without raising it. Besides, if the railroad company wished to waive its

immunity under the common law, it cannot be perceived how that affects the rights. of the milling company. *Held*, also, that the railroad company, having failed to raise by some sort of pleading that its liability is governed by the Federal Employers' Liability Act, cannot raise the question for the first time in the appellate court.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

.REVERSED AND REMANDED.

*Sebree & Sebree,* for appellant Jacob M. Dickinson.

*Adrian F. Sherman* and *Thad. B. Landon* for appellant Ismert-Hincke Milling Company.

(1)   The court erred in overruling the demurrer of the defendant milling company at the close of plaintiff's evidence, and in refusing to peremptorily instruct the jury to return a verdict for said defendant.   a.   Under the pleadings and the evidence, the milling company was not guilty of negligence.   Crawford v. Stockyards Co., 215 Mo. 410; Morris v. Pryor, 272 Mo. 350; Lewis v. Coal Co., 84 Kan. 333; Oplotnik v. Mining Co., 98 Kan. 356; Pankey v. A., T. & Santa Fe Ry. Co., 180 Mo. App. 185; South Side Elec. Ry. Co. v. Nes-Co., 180 Mo. App. 185; South Side Elec. Ry. Co. v. Nesvig, 214 Ill. 463.   (2) The evidence shows that the location of the post near the west rail of track 2 was in no way the proximate cause of plaintiff's injury.   A new and independent cause, to-wit, a sag in the west rail of track 2 at or near the post in question, intervened between the action of the milling company in locating the post, and the plaintiff's injury.   Kiser v. Suppe, 133 Mo. App. 19; Haley v. Transit Co., 179 Mo. 30; Dickson v. Ry. Co., 124 Mo. 140; Hudson v. Wabash Ry. Co., 101 Mo. 13; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Glenn v. Met. St. Ry. Co., 167 Mo. App., 109; Cole v. German Savings & Loan Society, 124 Fed. 113; Sec. 9850, Genl. Stat. Kan. 1909; Railway

Co. v. Columbia, 65 Kan. 390; Railroad Co. v. Justice, 80 Kan. 10; Eberhardt v. Telephone Co., 91 Kan. 763; Gas Co. v. Dabney, 79 Kan. 820; Rodgers v. Ry. Co., 75 Kan. 222; Crawford v. Stockyards Co., 215 Mo. 394. (3) The court further erred in denying the demurrer of defendant milling company for the reason that there was a clear misjoinder of parties defendant, and a misjoinder of causes of action. Federal Employers' Liability Act (Act of Congress, Apr. 22, 1908, Ch. 149, 35 Stat. L. 65, 8 Fed. Stat. Ann. 1208); Pipes v. Mo. Pacific Ry. Co., 267 Mo. 385; Lucchetti v. Philadelphia & R. Ry. Co., 233 Fed. 137; Union Pacific v. Wyler, 154 U. S. 285, 39 L. Ed. 983; Bankson v. Illinois Central Ry., 196 Fed. 171; Sec. 1795, R. S. 1909; Beattie v. Gerardi, 166 Mo. 143; Toledo, St. Louis & W. Ry. Co. v. Slavins, 236 U. S. 455, 59 L. Ed. 454; Doyle v. St. Paul Depot Co., 134 Minn. 458. (4) The court erred in giving instruction number 2 at the request of the plaintiff. The instruction was erroneous; (1) no negligence was proven, and (2) the location of the post was not the proximate cause. Authorities supra. It was further erroneous because it allowed the jury to put the absolute duty upon the milling company to remove the post. Morris v. Pryor, 272 Mo. 350; Pankey v. A. T. & S. F. Co., 180 Mo. App. 185; Crawford v. Stockyards Co., 215 Mo. 410. (5) The court erred in the giving of instructions number 1 and number 2, at request of plaintiff. These instructions are inconsistent and contradictory and in conflict with other instructions given on behalf of defendants.

*Boyle & Watson* for respondent.

(1) The defendants, not having stood on their demurrers at the close of plaintiff's case, and having introduced evidence in their own behalf, the final demurrers search all the testimony, and the plaintiff is entitled to any benefit to be derived from the defendant's proof. Stauffer v. Metropolitan St. Ry. Co., 243 Mo. 305; Peters v. Lusk, 200 Mo. App. 372, l. c. 379. (2) Under the

pleadings and the evidence, the defendants were both guilty of acts of negligence, which were concurrent and each of which created liability, and each constituted a proximate cause and either or both defendants were liable. Ganahl v. United Railway Co., 197 Mo. App. 495; Harrison v. K. C. Electric Light Co., 195 Mo. 606; Newcombe v. N. Y. Central Ry. Co., 169 Mo. 409; Hawkins v. Railroad Co., 182 Mo. App. 328; Buckner v. Horse & Mule Co., 221 Mo. 711; Clark v. Powder Co., 94 Kan. 268; 29 Cyc. 496, 497; 29 Cyc. 465; Chase v. Railroad, 156 Mo. App. 701; Young v. Waters Pierce Oil Co., 185 Mo. 634; Snyder v. Light Co., 98 Kan. 157; Hartman v. Railway Co., 94 Kan. 184. (3) The question of contributory negligence is not in this case, for the reason it is not pleaded. Harrington v. Dunham, 273 Mo. 414. (4) The plaintiff did not and could not assume the risk of the defendant railway's negligence. George v. Railroad Co., 225 Mo. 406; Fish v. Chicago, Rock Island & Pacific Ry., 263 Mo. 106; Charlton v. St. L. & S. F. R. R. Co., 200 Mo. 433. (5) The defendant milling company breached its duty toward plaintiff, an invitee. Glaser v. Rothchild, 221 Mo. 185. (6) There was no misjoinder of parties defendant or of causes of action, and even had there been the questions could only be taken advantage of by demurrer to the petition, by answer or motion to elect, and could not be raised by a demurrer to the evidence. Ganahl v. United Railway Co., 197 Mo. App. 495; Lass v. Eisleben, 50 Mo. 124; Horstkotte v. Menier, 50 Mo. 160; Johnson v. United Railways, 247 Mo. 357; Fulwider v. Gas, Light & Power Co., 216 Mo. 591. (7) There is no misjoinder of parties defendant or causes of action herein by reason of the Federal Employers' Liability Act. (a) The petition does not refer to said act, nor do the facts pleaded bring it within said act, and neither of the defendants made any reference to said act, or facts coming within that act in their answers. Taber v. Mo. Pac. Ry. Co., 186 S. W. (Mo.) 688; Giersch v. Santa Fe, 98 Kan. 452; Atlantic Coast Line v. Mims, 242 U. S. 532, 61 L. Ed. 476; 2 Robert's Federal Liability of

Carriers, p. 1207. (b) The defendant railway company, the only party defendant having the right to raise the question, tried the case in the court below as an action based on common law negligence. Mathieson v. Railroad Co., 219 Mo. 542. (c) The court erred in receiving the proof offered by the defendant milling company on this subject, which was objected to by the plaintiff, and plaintiff is entitled to insist upon this error to uphold his judgment. St. Charles Savings Bank v. Denker, 275 Mo. 620. (8) The instructions given are not inconsistent or in conflict with each other.

RAGLAND, C.—This suit was instituted in the Circuit Court of Jackson County to recover damages for personal injuries received by the plaintiff, an employee of the defendant, Jacob M. Dickinson, Receiver of the Chicago, Rock Island & Pacific Railway Company, while engaged in switching cars in the yards of the defendant, Ismert-Hincke Milling Company, in Kansas City, Kansas.

The defendant Ismert-Hincke Milling Company, hereinafter referred to as the Milling Company, at and prior to the occurrences presently to be narrated, operated a large flour mill and elevator. Its plant was located in the neighborhood of the terminal and switching yards of the Chicago, Rock Island & Pacific Railway Company, hereinafter called the Railway Company, but its premises were enclosed. On the north side there was a gate, through which the Railway Company constructed a track from its yards south to the mill and elevator, for the purpose of delivering at the latter point cars loaded with wheat and receiving there cars loaded with the mill products. Connected (or to be connected) with this track there were three railroad tracks along the west side of the main structure of the mill and elevator. The one next to the mill was known as track 1, the one next west as track 2, and the remaining one as track 3. Over these three tracks there was a steel shed, open at the north and south ends to permit the passage of

cars under and through it. The evidence does not particularize as to the dimensions of this shed or the character of its construction, except that it was supported by posts, all of which, possibly, were iron, with the exception of one. Photographs introduced show that on the east side its roof was attached to the west wall of the main structure, and that as a whole it was fashioned somewhat after the manner of a bridge construction. There was a row of posts between tracks 1 and 2 and another between tracks 2 and 3. The posts between 1 and 2 were placed equidistant from the tracks, there being a space of approximately four feet between post and rail. The posts between 2 and 3 were four feet west of the west rail of track 2. The intervening spaces between these latter posts and the east rail of track 3, between the west rail of track 3 and the west wall of the shed, and between the east rail of track 1 and west wall of the main mill structure, were not shown, but the photographs indicate that these spaces were not more than sufficient for the clearance of cars moving over tracks 1 and 3. Between tracks 1 and 2 there was the opening of a concrete tunnel, into which wheat was unloaded from the cars, and from thence conveyed to the elevator. The posts between these latter tracks, in addition to furnishing support for the roof, were used in connection with and constituted a part of the unloading device. Track 2 was the one generally used for unloading. It extended a short distance south of the shed, where it became, in railroad parlance, a dead end. In switching cars loaded with wheat on track 2, in order to make room for them and properly spot them for unloading, it was often necessary to first proceed on through the shed and couple on to empty cars standing near the south end of the track for the purpose of bringing them out or pushing them on to the end of the track. Track 1 was used in part as a holding track and in part for placing cars to be loaded; track 3 at the time of plaintiff's injury had not been connected with the lead, but it was constructed over scales for the weighing of cars

and loads, and was to be used as an additional unloading track. There were three posts between tracks 2 and 3, six or seven feet apart, and, as already indicated, they were in a line. The south and middle ones were eight-inch iron posts, the northernmost was wood and presented a surface eight inches wide in approaching it from the north along track 2. This latter post was plainly visible to operators handling cars as soon as they entered the mill yard, approximately three hundred and fifty feet north of the shed.

The mill structures, including the shed and its supports, had been erected by the Milling Company and were under its exclusive control and supervision. The tracks had been constructed by the Railway Company, they were used by the defendant receiver in the service of the Milling Company only, but it was incumbent upon him to keep them in repair. The crew in charge of the engine that did the switching for the mills in the vicinity of the Railway Company's yards made two trips daily into the yards of the Milling Company to deliver and receive the cars incident to the latter's industry.

On March 2, 1916, plaintiff was working for the defendant receiver as a switchman. He was an experienced brakeman, but at that time was on the extra list, having no regular assignment. On that day he was directed to serve as one of the switching crew in charge of the mill engine. The crew consisted of a foreman, an engineer, a fireman and two switchmen. One of the switchmen was called the engine-man, it was his duty to be on or near the engine; the other was called the field-man, and it was his duty to be on or near the car furtherest removed from the engine and to give the necessary signals to the engine-man who communicated them to the engineer. This crew on the day in question was directed to move a string of seven cars loaded with wheat from the railroad yards to the mill yards and place them on the unloading track. All of the members of the crew were familiar with the mill yard, the approaches to the mill and elevator and the imme-

diate environs, except plaintiff; he had been in the yards but once before and then under such circumstances that it was not incumbent upon him to make, and he did not make, any observations as to structures near the tracks. As they entered the mill yard with this drag of seven cars the engine was headed to the south, pushing the cars and moving at the rate of from four to six miles an hour. The engine man was standing on the footboard of the engine between the engine and the first car; the foreman was at the south end of the south car, standing with his right foot on the drawbar and his left on the bottom grab-iron on the end of the car on the west side, holding with one hand to the brakestaff and looking in the direction the car was moving: and the plaintiff, who was field-man, was on the ladder on the west side of the south car near the south end, standing on the bottom grab-iron and holding to one higher up. Plaintiff looked south and saw a car standing beyond the mill shed and near the end of the track. he also saw a post on the west side of the track (track 2) and thought there-was ample space to clear him while riding on the side of the car, and, having reached that conclusion, gave it no further thought. He then swung partially around the end of the car, that is, he put his right foot around on the same grab-iron on which the foreman had his foot, and he put his head around also, and asked the fore-man for instructions. The foreman gave him some directions with respect to the car standing near the end of the track, plaintiff then raised his head and probably changed the position of his body somewhat to make further observation of the car ahead, and, as he did so, a post, which proved to be the south post of the shed, appeared immediately in front of him. He tried to swing around the end of the car, but he was caught about the hips and rolled between the car and post and severely injured.

Later on the same day the car on which plaintiff was riding when injured was placed on track 2 with the south end opposite the post that struck plaintiff and

certain measurements were made. From the bottom of the car to the roof was 9 feet; the grab-irons were 17 inches apart and set within 3 inches of the end of the car, they projected from the side of the car 3 inches. At a point two feet above the bottom of the car the space between the side of the car and the post was 14 inches, at a point two feet below the roof the space was 10 inches. The spaces between the grab-irons and the post at these points was of course 3 inches less. There was a low place under the west rail of track 2 near the south post that caused the top of the car to be nearer the post than the bottom when the car was stationary, and which caused cars when in motion to sway toward the post in passing it.

Plaintiff at the time he was struck, in that he was riding on the side of the car, was, in that respect, in a position that was a usual and customary one for the proper discharge of his duties where there were no structures so close to the track as to make it hazardous, but members of the crew who were familiar with the mill shed and the locations of the posts never attempted to ride through, they always got off on approaching the shed, walked along and gave the necessary signals. None of them had ever seen a switchman attempt to ride on the side of a car as it was moving past these posts prior to plaintiff's injury. There was some evidence tending to show a warning in general terms to the employees of the defendant receiver of the dangers arising from the proximity of structures to the tracks in the Railway Company's terminal yards and in those of the industrial plants served by the defendant receiver, but plaintiff testified that he had never been warned as to the dangerous proximity of these specific mill posts to the track and that he had no knowledge thereof. In 1911 the plaintiff was in the employ of the Railway Company and, as a condition of his continuance in its service, he was required to sign, and he did sign, a new application for employment which contained the following:

"I have had explained to me the dangerous nature of the service in which I am about to engage. I understand that standing in front of, or getting on to, an engine or car coming toward me is dangerous, and is in violation of the rules, and if done by me will be at my own risk. I understand that great care must be exercised in approaching and passing all bridges and overhead structures, as they will not clear a man standing on top of a high covered car; that it is dangerous to climb up and down the sides of cars, or to otherwise expose myself, while passing water tank spouts, and house pipes, coal houses or chutes, seed houses, cotton platform, signal posts, through girder bridges, switch stands, mail cranes, roundhouse doors, buildings and other structures dangerously near to the track, as they will not clear a man with safety, and that I am required to look out for them and avoid danger. I understand that the duties of the aforesaid situation expose me to great danger, the risk of which I assume, and agree to use constant and proper care to prevent injury to myself and others."

The petition contains three specifications of negligence: (1) that the "post was located, maintained and permitted to remain at a place which was so close to the west side of said track on which said cars were being operated, that a switchman riding on the west side of a box car . . . could not clear said post and pass it without being struck;" (2) that defendants "suffered and permitted said track to fall into a state of disrepair in that the west rail was not resting on a firm and solid base or bed at the place of said accident; thereby causing the car upon which plaintiff was riding to sway westward toward said post as it passed said post and said post to strike plaintiff," and (3) that defendants "failed to warn plaintiff that said post was dangerously near said track, as aforesaid, and failed to warn plaintiff of the dangerous condition of the track contiguous to said post, as aforesaid."

There was a further general allegation that the de-
fendant receiver negligently failed to provide plaintiff a-
reasonably safe place in which to do his work, on ac-
count of the nearness of the post to the track and the
defective condition of the track at that point.

The answer of the defendant receiver was a general
denial, coupled with the pleas of contributory negligence
and assumption of risk; the answer of the defendant
Milling Company, in addition to a general denial and a
plea of contributory negligence, pleaded a statute of the
State of Kansas relating to the adoption of the common
law in that state.

At the close of all the evidence each of the defend-
ants requested the court to direct a verdict in his favor.
This the court refused to do.  At plaintiff's instance the
court told the jury, by instruction 1, that if they found
"that said defendant, receiver, negligently suffered and
permitted said track 2 to fall into a state of disrepair,
if so, in that the west rail was not resting on a firm and
solid base or bed at a point east of said south iron post,
if so, and that by reason thereof the car upon which
plaintiff was riding was caused to sway westward
toward said post as it passed said post, if so, by reason
thereof plaintiff was struck by said post and thrown from
his position on said car, and that defendant receiver
knew, or by the exercise of ordinary care could have
known of said condition of said track, if you find it was
in said condition, in time by the exercise of ordinary
diligence to have repaired it and thereby avoided injur-
ing plaintiff and negligently failed to do so, then your
verdict will be for the plaintiff and against the defend-
ant receiver, provided, however, in all events that you
further find that the danger, if you find there was dan-
ger, of being struck by said post, was not one of the
risks and hazards of the employment in which plaintiff
was engaged, and of which he had knowledge or by the
exercise of ordinary care could have had knowledge, and
provided you further find that plaintiff at the time he

was struck, if you so find, was in the exercise of ordinary care on his part for his own safety.''

And further by instruction number 2: ''And if you further find and believe from the evidence that the said south iron post was placed and maintained by the defendant, Ismert-Hincke Milling Company, at a place so close to the west side of said track 2 that a switchman riding on the west side of a box car being moved on said track 2 and past said post would not clear said post, and that defendant Ismert-Hincke Milling Company knew, or by the exercise of ordinary care could have known that box cars would be moved along said track 2 past said south iron post, and that in so moving cars it would be necessary for a switchman to be on the west side of a box car that might be moved along said track 2 past said south iron post, and that defendant Ismert-Hincke Milling Company knew, or by the exercise of ordinary care could have known, that said post was so close to the west side of said track 2 that a switchman riding on the west side of a box car being moved along said track 2 and past said south iron post would not clear said post in time by the exercise of ordinary diligence to have removed said post, but failed to do so, and if you also find, that plaintiff was struck by said post and thrown from his position, if you find he was, by reason of the fact that said south iron post was so close to said track that it would not clear a switchman riding on a car as aforesaid, if you find it was, and that the location of said post was the proximate cause of said injury, then your verdict will be for the plaintiff and against the defendant Ismert-Hincke Milling Company, provided you further find that at the time plaintiff was struck by said post, if you find he was struck, he was exercising ordinary care for his own safety.''

Instructions requested by defendants, given and refused, will be referred to hereafter.

The jury found against both defendants, assessing plaintiff's damages at a substantial sum. From the

judgment rendered in accordance therewith each defendant appealed.

Appellant receiver assigns as error: (1) the failure of the trial court to sustain his demurrer to the evidence and (2) the giving of instruction number 1. The appellant Milling Company assigns as error: (1) the failure of the court to sustain its demurrer to the evidence, and (2) the giving of instruction number 2. As the cause will have to be remanded for another trial we will consider all questions raised by the respective demurrers, as well as the propriety of giving the instructions referred to.

I.   If the court committed error in not directing a verdict for the defendant receiver, it is because (a) the evidence was not sufficient to take the case to the jury on any of the three specifications of negligence set out in the petition, or (b) the evidence as a **Promixity of Track to Post.** whole shows that the plaintiff, as a matter of law, was guilty of contributory negligence barring a recovery, or (c) his injury was caused by a risk that he assumed as an incident to his employment, which would also in effect negative any negligence on the part of this defendant.

The first assignment of negligence is that the defendants negligently located and maintained the post so close to the track (or the track so close to the post) that a switchman riding on the side of a box car could not pass it without being struck. The evidence unquestionably shows such proximity of post and track and but little, if anything, more. Does such showing support the allegation of negligence? In other words, does the mere fact that the post was maintained so close to the track that a switchman riding on the side of a box car could not clear it, constitute negligence? There was no attempt on the part of the plaintiff to show, nor does it otherwise appear, that there was sufficient ground available to the Milling Company for the tracks under the shed to have been constructed further apart and

consequently the spaces between the posts and the tracks widened, or that it was practicable or feasible for the Milling Company in the construction and maintenance of the buildings and appliances necessary for the efficient prosecution of its industry to have placed the posts elsewhere or done away with them entirely, or that the Railway Company could have located its tracks else-where and rendered the service required at its hands by the Milling Company. Plaintiff's case in this respect rests exclusively on the notion that the mere operation of cars over a track in such close proximity to a post, regardless of all other conditions, is negligence. In the practical operation of railroads there are, no doubt, many platforms and other structures, especially those used in connection with industrial plants, that are neces-sarily so close to the tracks that a brakeman or switch-man can not pass them in safety on the side of a mov-ing car. That such situations are inherently dangerous is beyond controversy, but such dangers are incident to the operation of railroads and do not arise from negli-gence. It is only when such structures are unnecessarily maintained in dangerous proximity to the tracks that such maintenance constitutes negligence. [Morris v. Pryor, 272 Mo. 350; Railroad v. Vallowe, 214 Ill. 124; Railroad v. McDade, 191 U. S. 64; Scidmore v. Railroad, 89 Wis. 188.]

Whether in a given case such a dangerous structure is justified by the necessity of the situation is, on the attendant facts, sometimes a question for the court and at others for the jury. In Murphy v. Railroad, 115 Mo. 111-119, it is said that when a structure like a signal post or fence is placed so near to the track by a railroad company that one of its servants, when in the discharge of his duty, is struck and injured without fault on his part, the liability of the company is fixed. Additional proof is not necessary in such case. In Morris v. Pryor, supra, the negligence predicated as the basis of the action was the maintenance of a curved railroad track in its relation to the coal bin of an industrial plant. The

effect of the curved track was that a car forty-two feet long standing at the coal-bin in a position to be unloaded stood at a distance sufficient to permit a switchman to stand or move between the car and the bin with safety, but when the car was moved its middle portion swung in towards the inside of the curve and slowly moved toward the coal-bin and crushed him. There was nothing to indicate that the railroad company did not do its. best, consistently with successful operation, in the location and construction of the track on the line adopted. We held as a matter of law that no negligence was shown. Between the situation considered in the Murphy case and that in the Morris case there is a wide field wherein the question of negligent construction and maintenance is for the jury. [Fish v. Railroad, 263 Mo. 106-121; Charlton v. Railroad, 200 Mo. 413-440.] In the case last cited the defendant railroad company was deemed negligent because there was "no legitimate *necessity* for maintaining a water crane so close to a passing car as to be dangerous to a brakeman in the line of his duty." In the Fish case, which was also a water crane case, the apparent lack of *necessity* for maintaining the structure so close to the track as to endanger the railroad operatives was the controlling thought in holding that there was sufficient evidence to take the question of defendant's negligence to the jury. In the instant case there were not sufficient facts in proof to warrant either the court or the jury in finding that the track was maintained unnecessarily, and hence negligently, close to the post.

II. The second ground of alleged negligence, the only one on which the case was submitted to the jury so far as the defendant receiver is concerned, was the defective condition of the track near the post which caused the cars in passing to sway toward it.

**Defective Track.** The petition in a preceding paragraph alleges that the post was located, maintained and permitted to remain at a place which was so close to the

west side of the track that a switchman riding on the west side of a box car could not pass by it without being struck. If this were true, and the plaintiff is conclusively bound by the allegations of his pleading, he would have been struck by the post even if there had been no low place in the track that caused passing cars to sway toward it. It would seem, therefore, that *the location and maintenance of the post so close to the track* was the efficient and proximate cause of his injury and the defective condition of the track a mere concomitant that in no wise contributed to it. Respondent contends in his brief and argument here that *on account of the condition of the track* the post was located and maintained so close to it that a switchman on the side of a car could not pass it without being struck. The petition will not bear any such construction. One phase of the evidence tends to show that the post was *not* located and maintained so close to the track that a switchman on the side of a car would not clear it, viz.: that the plaintiff, who was leaning partly around the end and hugging the car, did safely pass two posts located the same distance from the track as the one that struck him. Had the pleader alleged that defendant negligently located and maintained the post so close to the track (or the track so close to the post) that it was dangerous to a switchman riding on the side of a box car, and negligently permitted the track near the post to become and remain so out of repair that cars in passing the post swayed toward it, and further alleged in the alternative that the one negligence, or the other, or the two concurrently, caused plaintiff's injury, a case would have been made on the evidence to go to the jury, under proper instructions, on the question of whether the defective track caused, independently or concurrently with the location of the post, plaintiff's injury. As pleaded the plaintiff was not entitled to go to the jury on that issue.

Aside from the question of pleading, however, the verdict cannot stand, because based on inconsistent

findings of the jury. It found against defendant Milling Company solely on the grounds that the post was located and maintained so near the track that a switchman on the side of a box car could not pass it without being struck, and that the location of the post, independent of any other fact or circumstance, was the proximate cause of the injury, and against the defendant receiver solely on the ground that the injury was caused by the defective condition of the track. They were not required to find that the alleged negligent act of one defendant concurred with that of the other to cause the injury, so that the verdict presents the anomaly of two separate acts of negligence, of two defendants respectively, operating independently of each other, causing the same inury.

III. The third assignment of negligence is that defendants "failed to warn plaintiff that said post was dangerously near said track." If the maintenance of the post and track in such close proximity was not negligence, as must be assumed in the absence of proof to the contrary, the peril arising therefrom was incident to the plaintiff's employment. Whether the plaintiff assumed this risk depends entirely on whether he knew, or by the exercise of ordinary care would have known, of it. He cannot be held to have assumed a risk of which he was totally ignorant. If the danger was unknown to plaintiff and would not be ascertained by him in the exercise of ordinary care and prudence, it became the duty of the defendant receiver to give warning and for a failure to do so he would be liable. [Murphy v. Railroad, supra, l. c. 119. Railroad v. Vallowe, supra; 18 R. C. L. 684, n. 15.] Under such circumstances it was his duty to exercise ordinary care to minimize as far as possible this peril that was necessarily incident to plaintiff's employment, if such is the fact. [Railroad v. Dailey, 179 Fed. 289, 291.] There is nothing in the evidence to show that such hazards as the one in question were of frequent occurrence, either in the yards in which plaintiff worked, or on railroads

*Warning.*

generally.   On the contrary it tended to show that they
were extremely exceptional.   It cannot then be said that,
as a matter of law, it was one of the "ordinary" risks
of the employment of which plaintiff by the exercise of
ordinary care was bound to know.   He testified that
prior to the time he was injured he had never been under
the mill shed, that he had never had occasion before
that time to observe the relative positions of the posts
and the tracks, and that he had no knowledge whatever
in respect thereto.   He further testified that on the day
that he was hurt, as the car, on which he was, approach-
ed the shed, he looked south along the track for possible
obstructions; that he saw what appeared to him to be
one post, and that so far from the track that he could
easily clear it while on the side of the car; and that
after having made these observations and reached the
conclusion that there was no danger he gave his atten-
tion to the work at hand.   The difference between aver-
age people in the power of accurate observation is well
known, and it cannot be said as a matter of law that
the danger arising from the nearness of the posts to the
track was so open and obvious that plaintiff will be pre-
sumed to have had knowledge of it.   [Charlton v. Rail-
road, supra.]   Although this issue was not submitted,
there was ample evidence to take it to the jury.

What we have said in the foregoing paragraph
disposes also of the questions raised in connection with
the defenses based on assumption of risk and contribu-
tory negligence.

IV.   As another trial of the case will be necessary
it is deemed proper to call attention to some of the in-
structions given at the instance of the defendant re-
ceiver, which are to the effect that the receiver is not
**Dangerous Track.** responsible for the location and main-
tenance of the post which struck plaintiff,
and that he was not negligent by reason of its installa-
tion and maintenance as disclosed by the evidence.   These
instructions are misleading, if they do not in fact involve

an entire misconception of the law. If the track was negligently maintained dangerously near the post the receiver is liable. The master is bound to exercise ordinary care to make the place where his employees work reasonably safe, and where he contracts to do the work on the premises of another, and retains direction and control of the work, the general rule applies, and he must exercise the same care for the safety of his employees that the law imposes on him on his own premises. [Clark v. Foundry Co., 234 Mo. 436, l. c. 454; Penn. Steel Co. v. Nace, 113 Md. 460.] Defendant receiver was not required by law to operate the switch tracks in the mill yard under conditions dangerous to his employees, if it was practicable and feasible for such dangerous conditions to be removed. If he had no such control that he could have removed such conditions himself, he could have required the Milling Company to have done so, or refused, until such change, to do its switching. [Devine v. Delano, 272 Ill. 166.]

V.  If the Milling Company negligently maintained the post in question dangerously near the railroad track, it is also liable to plaintiff for the injury inflicted upon him thereby. It is fundamental law that the owner or occupant of land or a building who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils. When it arranged with the defendant receiver to do the switching in and about its mill and elevator it knew and was bound to anticipate that it was usual and customary for brakemen and switchmen in switching cars to be upon the ladders on the sides of cars that were being moved, and hence it was its duty to not unnecessarily maintain posts or other structures in dangerous proximity to the tracks. [Clark v. Railroad, 234 Mo. 396; Ryan v. Transit Co., 190 Mo. 621.] If it was necessary to have maintained the post in ques-

15—280 Mo.

tion so close to the track that a person could not pass it on the side of a car without being struck, and the danger therefrom was not so open and obvious to a switchman while in the discharge of his duty in the usual and customary way that by the exercise of ordinary care he would have discovered it, as the evidence tends to show, then such danger was a latent or concealed one within the meaning of the rule, and it was the duty of the Milling Company to have given the plaintiff warning. [Glaser v. Rothschild, 221 Mo. 180.] As pointed out in paragraph 1 of this opinion, the evidence was not sufficient to show the negligent maintenance of the post in proximity to the track, and for that reason the giving of instruction 2 was error, but there was ample evidence to go to the jury on the negligent failure to warn and hence the demurrer of the defendant Milling Company, on the evidence, was well ruled.

VI. The Milling Company introduced over the objection of the plaintiff evidence tending to show that the cars of wheat which the latter was engaged in switching at the time of his injury were interstate shipments, and that by reason thereof plaintiff was at the time employed in interstate commerce. On this showing appellant Milling Company insists that its liability, if any, arises under the common law, while that of the defendant receiver is governed solely by the Federal Employers' Liability Act, and hence that there are misjoinders, both of defendants and of causes of action. Such misjoinders were asserted in the court below for the first time at the conclusion of all the evidence, and then as further grounds of the demurrer to the evidence then offered. Nothing appears in the petition from which an inference can be drawn that the plaintiff was employed at the time of his injury in interstate commerce; nothing in the respective answers even suggests it. The petition charges both defendants with a common-law liability. If the defendant receiver wished to waive his immunity therefrom, it is not per-

*Interstate Commerce.*

ceived what possible concern it can be to the defendant Milling Company. If, however, the Milling Company had a right to raise the question of misjoinders on the ground assigned, it waived it by pleading over. We rule the point against appellant Milling Company. [Taber v. Railroad, 186 S. W. 688; Railroad v. Mims, 242 U. S. 532; Ganahl v. United Railways Co., 197 Mo. App. 495; Johnson v. Railways Co., 247 Mo. 326.]

VII. Appellant receiver makes the point, apparently, for the first time in this court, that his liability, if any, is governed solely by the Employers' Liability Act. Waiver. Not having raised the question in the court below by a *pleading* of some sort, he is precluded from raising it now. [Taber v. Railroad, supra.]

For the errors noted the judgment is reversed and the cause remanded to be tried in accordance with the views herein expressed.

*Small* and *Brown, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAG-LAND, C., is adopted as the opinion of the court. All of the judges concur.