243 S.W.2d 510 (1951)
SPRANKLE
v.
THOMPSON.
No. 42258.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*511 Thomas J. Cole, Oliver L. Salter, St. Louis, Lyman J. Bishop, Belton, for appellant.
J. M. Feigenbaum, Robert E. Feigenbaum, St. Louis, Bruneau E. Heirich, Chicago, Ill., James T. Blair, Jr., Jefferson City, for respondent.
HOLLINGSWORTH, Judge.
Plaintiff, a switchman in the employ of defendant, was injured while working in the yards of Temple Cotton Oil Company, in North Little Rock, Arkansas, at about 6:00 P.M., November 5, 1947. He brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the Safety Appliance Act, 45 U.S.C.A. § 11. Following verdict and judgment in his favor for the sum of $36,000, defendant appealed.
Error is predicated on the grounds: that no submissible case was made, the giving and refusing of certain instructions, allowance of an amendment to plaintiff's petition during trial, refusal of trial court to declare a mistrial because of prejudicial statements made by plaintiff's counsel during argument, and the verdict and judgment is excessive.
*512 The petition alleged and the answer admitted that plaintiff and defendant were engaged in interstate commerce at the time he was injured and that any right of recovery he may have is governed by the Federal Employers' Liability Act and the Safety Appliance Act of the United States.
The petition further alleged that plaintiff attempted to release a hand brake on a car in a moving cut of cars by operating a brake wheel in a proper manner, but by reason of the defective and inefficient condition of said brake the release would not function and it was necessary for him to climb to the top of the car and while kneeling on the roof he attempted to release the brake; that a roof (referred to in the evidence as a canopy) from one of the Temple Company's buildings adjacent to the track protruded over the car upon which he was kneeling; that as he attempted to release the brake from his kneeling position the train moved under the roof and he was struck thereby, knocked to the ground and injured; that defendant was negligent in the following particulars: (a) failure to use reasonable care to furnish plaintiff with a safe place to work, (b) failure to warn of the dangerous proximity of the roof to the track, and (c) operation of a car equipped with an inefficient and defective hand brake in violation of the Safety Appliance Act.
The answer denied the allegations of negligence and pleaded that plaintiff's injuries were caused by the sole negligence of plaintiff; or, if his negligence was not the sole cause of his injuries, then it was contributory and should be considered in diminution of damages.
Temple Cotton Oil Company is a processor of cottonseed and a manufacturer of fertilizer. Its plant is situate near to and south and east of defendant's main tracks. There are three paralleling rows of buildings, each row extending in a general east and west direction. Since about 1925 defendant has done the rail hauling for this company. In so doing, a series of five lines of tracks were installed by defendant. These tracks enter the Temple property from a somewhat southerly direction. As they approach the west end of each row of buildings, they curve eastward and thereafter parallel the rows of buildings.
During all the years plaintiff worked for defendant, wooden canopies extended horizontally from some of the buildings adjacent to tracks 1, 3, 4 and 5, out over the tracks and above the tops of boxcars situate thereon. The purpose of these canopies was to protect and preserve commodities being loaded or unloaded, and a majority of the buildings had them. The canopies on tracks 1, 4 and 5 extended out over the tracks to the full width of boxcars situate thereon, but the canopy over track 3 extended only to about the center or two-thirds of the way across the catwalk along the center of the boxcar.
Plaintiff was injured while working on track 3. This track extends along and is closely adjacent to the south side of two adjoining buildings and dead ends at their east end. The first or west building is the fertilizer plant. The canopy by which plaintiff was struck extended outward from the central portion of the fertilizer plant and is immediately above the loading docks of that building. It was constructed of wood and supported by wooden braces attached to the building. Its overall length is not exactly shown, but apparently was about sixty feet. Its lowest point was at the east end, at which point it was seventeen feet above the tracks. This left a clearance of three feet above the roof of a standard boxcar.
Plaintiff entered the service of defendant in May, 1942, and was continuously in defendant's employ thereafter except during service in the Navy from April 10, 1944, to January 1, 1946.
At about 6:00 P.M., the crew, of which plaintiff was a member, started to remove two cars from the east end of track 3 to take them to weighing scales. There was not safe clearance between the track and the buildings, so all work was done on the south side of the track. As the engine, pushing three cars eastward, moved toward the two cars to be removed, plaintiff swung on to the east end of the third car from the engine going east. When it reached the two cars, he reached down and made the *513 coupling. He then signaled the engineer to back up. As the engine and cars moved back toward the west, a brake on the fourth car from the engine started "squealing". Plaintiff left the third car on which he was riding and caught the east or brake end of the fourth car. He then climbed onto the brake platform affixed to the south side of the east end of the car and about two and one-half to three feet below its top.
The car was equipped with an Ajax brake. The wheel on an Ajax brake sets vertically. A release lever is located between the wheel and the car. The top of the wheel is near the top of the car. The usual and customary way to release such a brake is to put the release lever over to the right of the operator in released position and pull the brake wheel around clockwise to relieve the tension on the dog. The wheel will turn to the left, counter-clockwise, in releasing.
Plaintiff put the release lever in release position and made two or three attempts to turn the wheel to his right (clockwise) to release the brake, but he could not turn it. He made no further attempt to force the release lever down while on the brake platform, but went to the top of the east end of the car, got on his hands and knees, facing north, on boards running from the top of the ladder on the south side of the car to the catwalk running lengthwise along the center of the top of the car. He held the north edge of the running board with his left hand and with his right hand gave three or four downward jabs on the release lever, which released it. He then started straightening up, still facing north, when he was hit on the left side about the waistline by the canopy extending out from the fertilizer plant, knocked to the ground and rendered unconscious. When he was straightening up immediately prior to being struck, he intended to go back to the brake on the other car and release it if necessary.
Track 3 is on a slight downgrade to the east, and it is customary to apply brakes or chock the wheels when cars are put at the east end of the track, but plaintiff had never placed boxcars that far into track 3 and had not applied brakes on cars thereon. Employees of the Temple Company might, in shifting cars for loading, set the brakes or chock them to hold them in place. It was 330 feet from the east edge of the canopy to the west end of the two cars as they were situate at the east end of the track before the switching movement began and 240 feet from the east end of the canopy when plaintiff got on the fourth car to release the brake. The car was then moving two to four miles per hour, which would give him time to release the brake before reaching the canopy if it was in efficient working order.
There were no warning signs or lights on the fertilizer plant or the canopy. At the time of the accident it was clear, but dark. Plaintiff was using his lantern. The plant was in operation and various electric lights about the plant made it light enough to work in the yard. When the cars were moving west on track 3, plaintiff never looked back toward the engine or canopy.
Plaintiff admitted that he had worked in these yards many times both day and night and knew there were canopies over tracks 1, 4 and 5, but testified that at the time of the accident he did not know there was a canopy over track 3. He further testified that the curvature in track 3, as it approached the fertilizer plant from the west, made the canopy appear to be a part of the building, and that, in working along the track from the south side, the canopy could not be seen because it did not extend across the tracks, as did the canopies on tracks 1, 4 and 5. It could only be seen from a distance of ten to twenty feet south of a boxcar standing on the track. He did not recall Mr. Robken of the Temple Company warning him of these canopies and never read an instruction or saw a bulletin posted as to the canopy over track 3.
Plaintiff further testified it was the common practice to take the position he assumed on top of the car when the brake could not be released from the platform, and that more weight could be placed on the release lever from that position.
Defendant's evidence was: Arkansas Division Special Instructions No. 7, which had been furnished plaintiff, contained a diagram showing minimum safe clearance above the center of a car to be six feet, *514 five and three-quarters inches. Mr. Robken always warned the brakemen of the location of the canopies, at least collectively, but he could not recall having personally warned plaintiff. Missouri Pacific Rule Book, Rule 2, also furnished plaintiff, requires employees to inform themselves respecting the location of structures that will not clear them. Rule 201 prohibited standing or sitting on the side or roof of a boxcar or standing near the end. Rule 205 required employees to take proper position in operating hand brakes and to have sure footing and firm handhold to prevent injury in releasing a brake from the platform. Several witnesses testified in behalf of defendant that they had never seen a brake released in the manner used by plaintiff in this instance; that the usual manner is to slip the dog over and press upon it, and if it does not then release, to lift the dog over and pull upon it.
The case was submitted to the jury on two grounds of negligence: Instruction No. 1 hypothesized negligent failure to furnish plaintiff a reasonably safe place to work and failure to make the presence of the canopy visible by artificial illumination during the hours of darkness. Instruction No. 2 hypothesized a failure to equip the car upon which plaintiff was injured with an efficient hand brake.
In determining whether a case was made under either or both of the theories submitted to the jury by Instructions No. 1 and No. 2, we are governed by the Federal statutes and decisions. Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418; Malone v. Gardner, Mo.Sup., 242 S.W.2d 516, and the cases therein cited.
Defendant argues, first, that the construction of the canopy by the Temple Company is an engineering problem not subject to review by a jury and negligence cannot be based on construction or operation, but, at most, only on failure to warn by customary methods; and, second, that under the admitted facts in this case plaintiff must be presumed to have known of the canopy, and failure to warn could not be the proximate cause.
By the amendment of 1939, 45 U.S.C.A. § 54, to the Federal Employers' Liability Act, providing that the employee shall not be held to have assumed the risks of his employment, in any case where injury or death resulted in whole or in part from the negligence of the employer, every vestige of the doctrine of assumption of risk is obliterated from the law. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. However, the employer is not an insurer of the safety of the employee while engaged in his duties. The basis of his liability is negligence, not the fact of injury. And, where facts are in dispute and the evidence in relation to them is such that fair-minded men may draw different inferences from the controverted and uncontroverted facts, the question of negligence is for the jury. Tiller v. Atlantic Coast Line R. Co., supra; Ellis v. Union P. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572. Only when there is a complete absence of facts to support the conclusion reached by the jury does reversible error appear. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916. But speculation cannot supply the place of proof. Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547.
There was no evidence that the canopy by which plaintiff was struck was not reasonably necessary for the preservation of the Temple Company's products as they were being loaded into or unloaded from their loading docks; or that it could have been placed higher above the tracks and served the purpose for which it was intended; or that its elevation above the tracks was less than canopies generally in use for similar purposes; or that it was constructed or maintained in any manner contrary to approved engineering and railroading practices. However, the contention of plaintiff is that negligence may be inferred alone from the proximity of the canopy to the tops of boxcars passing under it.
Under such a state of facts the case of Ford v. Dickinson et al., 280 Mo. 206, 217 S.W. 294, is directly in point. In that case, a post supporting the roof of a milling *515 company's shed extending over defendant's tracks was so close to the tracks that a switchman riding on the side of a boxcar was struck and injured by it. In discussing the identical issue here involved, this court said 217 S.W. loc. cit. 298: "In other words, does the mere fact that the post was maintained so close to the track that a switchman riding on the side of a box car could not clear it constitute negligence? There was no attempt on the part of the plaintiff to show, nor does it otherwise appear, that there was sufficient ground available to the milling company for the tracks under the shed to have been constructed further apart, and consequently the spaces between the posts and the tracks widened, or that it was practicable or feasible for the milling company in the construction and maintenance of the buildings and appliances necessary for the efficient prosecution of its industry to have placed the posts elsewhere or done away with them entirely or that the railway company could have located its tracks elsewhere and rendered the service required at its hands by the milling company. Plaintiff's case in this respect rests exclusively on the notion that the mere operation of cars over a track in such close proximity to a post, regardless of all other conditions, is negligence. In the practical operation of railroads there are, no doubt, many platforms and other structures, especially those used in connection with industrial plants, that are necessarily so close to the tracks that a brakeman or switchman cannot pass them in safety on the side of a moving car. That such situations are inherently dangerous is beyond controversy, but such dangers are incident to the operation of railroads, and do not arise from negligence. It is only when such structures are unnecessarily maintained in dangerous proximity to the tracks that such maintenance constitutes negligence." The case of McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 234, 227 S.W. 1047, 1051, certiorari denied 255 U.S. 573, 41 S.Ct. 376, 65 L.Ed. 792, follows the Ford case, supra.
Plaintiff, in effect, concedes that the Ford and McIntyre cases are determinative of the issue of negligence if they are now controlling authority, but contends that they were written prior to the abolition of the doctrine of assumption of risk in 1939, 45 U.S.C.A. § 54, and were based upon that doctrine. It is true that in these cases the doctrine of assumption of risk was pleaded or discussed. But a careful reading of each of them reveals that the issue of negligence was first determined before the doctrine of assumption of risk was applied or discussed.
Plaintiff relies principally upon two Federal cases, Ellis v. Union P. R. Co., supra, and Terminal R. Ass'n of St. Louis v. Fitzjohn, 8th Cir., 165 F.2d 473, 1 A.L.R. 2d 290. Both arose and were decided subsequent to the amendment of 1939. He says both are directly in point and are determinative of it. We are convinced, however, that neither is in point.
In the Ellis case, plaintiff, foreman of a switching crew, was crushed between a boxcar and a building as he was engaged with other members of the crew in backing an engine and car around a curve on a spur track where visibility was obstructed by a building located on the inside and near the middle of the curve. He was directing the operations from the side of the building nearest the curve. A switchman was around the curve, out of sight of the engineer. Plaintiff moved between the building and the track to the point of their closest proximity, in order to transmit signals between the switchman and the engineer. The proximity was deceptive because the cars tilted toward the inside of the curve as they moved around it. He was in the one small segment where clearance was not sufficient. He was unfamiliar with the area and had no warning of the danger, but there was a warning sign near the building reading "Impaired Clearance". In discussing the case, the court said: "From this evidence the jury might have concluded that petitioner had a safe place to work but elected to choose a dangerous one, that any duty of warning was fully discharged by the presence of the sign, and that the engineer had not been negligent in any way. In that view of the case the accident would be an unforeseeable, freak event or one caused solely by petitioner's *516 own negligence. On the other hand, it would not have been unreasonable for the triers of fact to have inferred that it was proper and usual procedure to work on the right side of the engine, that the hazard was not readily apparent and was almost in the nature of a trap, that while the sign was placed so as to be readily visible from a train, it was insufficient warning to a man on the ground, and that consequently petitioner was not furnished a safe place to work. [329 U.S. 649, 67 S.Ct. 600.]"
It is readily discernible the court did not hold that the proximity of the building to the tracks, in and of itself, would permit an inference of negligence, but rather did hold that that fact coupled with the further facts that (a) the hazard was not readily apparent and (b) the failure to give actual warning would justify an inference of negligence.
In the Terminal Railroad Ass'n case, supra, the railroad tracks were alongside a concrete loading ramp maintained by the U. S. Government at an ordnance plant. In the wall of this ramp were placed several iron standards on top of which electric lights were mounted. These standards were only six inches from the side of a boxcar standing or moving on the tracks. However, insufficient clearance, as a basis of negligence, was not the issue under consideration. The case turned on two issues: whether plaintiff was a "lent servant" to the Government, and whether plaintiff's contributory negligence was the sole cause of his injuries, both of which were decided adversely to defendant.
Plaintiff also cites the case of Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418. In that case plaintiff's duties as a brakeman caused him to step from the steps of a caboose, in the nighttime, to a trestle, upon which he did not know the train was standing. There was only two and one-half feet of clearance between the steps and the edge of the trestle. Plaintiff fell from it. There was evidence in that case, however, that it was feasible to erect a catwalk or guardrail alongside the trestle, and they would not interfere with the operation of the railroad. It was held that the failure to place a light, guardrail or catwalk on the trestle presented an issue of negligence. That is obvious.
We believe the Ford and McIntyre cases are soundly ruled and are not in conflict with any Federal or other controlling case found by or cited to us. It would seem unwise indeed to permit a lay jury to determine by pure conjecture and in total absence of evidence that the engineering and operative practices found in the instant case constituted negligence on the part of the railroad. We hold that plaintiff did not make a submissible case on the sole basis of the insufficient clearance between the top of the boxcar and the canopy.
The petition alleged failure "to warn and advise the plaintiff of the close proximity of said roof or fixed object to said track" when defendant knew or should have known it constituted a hazard to plaintiff. On this appeal, plaintiff takes the position that a submissible case was made regardless of warning. But, inasmuch as he caused the issue of failure to warn to be submitted to the jury as one of the elements of negligence hypothesized in Instruction No. 1, it cannot be held that he abandoned it.
In both the Ford and McIntyre cases, supra, it was expressly held that where the proper operation of the railroad necessarily requires an obstruction to be placed in dangerous proximity to its tracks, the railroad is negligent if it fails to give warning of such danger to its employees. Defendant recognizes the rule so announced, but contends plaintiff had knowledge of the danger, and, therefore, failure to warn could not be a proximate cause of his injuries. This argument is based upon plaintiff's long service in these yards, his admitted knowledge that canopies similar to these were on tracks 1, 4 and 5, and other yards wherein he had worked in that area, his admission that he had worked along and by the canopy at switching operations many times, both in daytime and nighttime, had ridden the front of locomotives as they approached and went under the canopy, and that the rules summarized in the statement of facts had been furnished him. However, plaintiff's testimony *517 on that issue presented a disputed issue of fact, which, under the Federal decisions, must be determined by the jury. Tiller v. Atlantic Coast Line R. Co.; Ellis v. Union P. R. Co., both supra. The failure to warn presented a submissible issue.
Was a submissible case made under the Safety Appliance Act? This Act, 45 U.S. C.A. § 11, makes it unlawful for the defendant to haul, or permit to be hauled or used on its line, any car not equipped with efficient hand brakes. Defendant contends, first, that the failure of the brake to release, if evidence it was not efficient, is not inconsistent with its being set too tight by employees of the Temple Company or of appellant; and, second, the failure to release was not a proximate cause of plaintiff's injuries.
In Wild v. Pitcairn, 347 Mo. 915, 149 S. W.2d 800, 802, certiorari denied 314 U.S. 638, 62 S.Ct. 72, 86 L.Ed. 512, this court stated: "The courts have repeatedly held that the duty to furnish efficient handbrakes is absolute and mandatory; that the plaintiff need not prove negligence on the part of the carrier; and that proof of the failure of the handbrake to work efficiently, when used in the customary and proper manner, fastens liability on the carrier without proof of any specific defect in the appliance. (Citing cases.)"
In the recent case of Myers v. Reading Co., 331 U.S. 447, 67 S.Ct. 1334, 91 L.Ed. 1615, the U. S. Supreme Court first quoted from and approved the language of an earlier case as follows, 331 U.S. 477, 67 S.Ct. loc. cit. 1338: "There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." In support of so holding, it cited Wild v. Pitcairn, supra, and then held: "The inefficiency of the brake in this case may have consisted of its defective condition or its defective functional operation resulting, in either case, in its knocking from the brake platform an experienced railroad man attempting to tighten or set the brake in the customary manner described in his testimony. That testimony was not descriptive of precise mechanical defects in the structure of the brake. It was, however, simple and direct testimony from which a jury reasonably might infer the brake's defectiveness and its inefficiency in the sense necessary to establish a violation of the Safety Appliance Acts." [Emphasis ours.]
Defendant cites Burnett v. Pennsylvania R. Co., 6 Cir., 33 F.2d 579, 580, as controlling authority in this case. In that case plaintiff was engaged in releasing a hand brake when the release wheel reversed violently, injuring him. The court said: "It is plain enough that this reverse spinning, thus happening, if in any way abnormal, must have been the direct result of an overtight setting by the employee who had previously set this brake", and held no jury issue of a defective brake was presented. We do not believe the evidence in the instant case justifies a similar conclusion. The only testimony touching upon this subject was given by Mr. Robken of the Temple Company and he said only that on occasions he had his men to move cars and "if there was any necessity for a brake, apply the brake or put a chock under it." To say that this constitutes evidence that an employee of either the Temple Company or of defendant set the brake on this car too tight is solely defendant's conjecture. Furthermore, we are pointed to no evidence from which it might reasonably be concluded that an efficient brake, normally operated, could or would likely be set too tight to permit its release in the manner contemplated by its mechanism. This contention must be ruled adversely to defendant.
Defendant urges that during the course of the trial counsel for plaintiff made a binding admission in stating, "I am not contending there was anything wrong with the brake." The statement arose in this manner: Mr. Heirich was cross-examining J. D. Corley, one of the crew. In referring to a "bad order tag" on the car in question, this occurred:
*518 "Q. Mr. Corley, that carthose two cars in there, had they been bad-ordered? A. Yes, sir.

* * * * * *
"Mr. Cole: That is immaterial to any issue, your Honor please. There is nothing wrong with the brake, not contended there was. They had been bad-ordered and so marked on the side of the car.
"Mr. Heirich: I am not contending there was anything wrong with the brake."
It is clear counsel was referring to the reason for the "bad order tag" and not to the theory on which the case was being tried. The contention is devoid of merit.
Was the failure of the brake to release when operated in the usual manner a proximate cause of plaintiff's injuries? In the case of Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64, loc. cit. 66, 68 L.Ed. 284, cited by defendant, it is specifically stated: "* * * and, on the other hand, he can recover if the failure to comply with the requirements of the Act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection." And in Carter v. Atlanta & S. A. Bay Ry. Co., 338 U.S. 430, 70 S.Ct. 226, 229, 94 L.Ed. 236, it was held: "Once the violation is established, only causal relation is in issue. And Congress has directed liability if the injury resulted `in whole or in part' from defendant's negligence or its violation of the Safety Appliance Act. We made clear in Coray v. Southern Pacific Co., supra, 335 U.S. [520], at page 523, 69 S.Ct. [275], at page 277 [93 L.Ed. 280], that if the jury determines that the defendant's breach is `a contributory proximate cause' of injury, it may find for the plaintiff." See also Smiley v. St. Louis-S. F. Ry. Co., 359 Mo. 474, 222 S.W.2d 481.
The facts in the instant case come squarely within the rule announced in the foregoing cases. According to plaintiff's evidence, his presence on top of the boxcar was made necessary by failure of the brake to release in the first instance, and that when injured he was engaged in releasing it in the manner usually and customarily employed by the switchmen in those yards when a brake could not be released from the platform. Defendant makes much of the fact that plaintiff raised his body upward when the brake released, intending to go to the next car and release its brake. Defendant argues it was his intention to walk across the catwalk on top of that car in so doing, and, that he would not have otherwise risen from his crouched position, but would have descended from the car without coming within range of the canopy. Plaintiff admitted he did intend to go to the other car, but denied any intent to go across the top of the car. The argument is without basis of fact under the evidence. The jury was warranted in finding plaintiff's injuries were caused in part, at least, by the failure of the brake to release when operated in a proper manner.
Instruction No. 1, given at the request of plaintiff, directed the jury that: (1) if it found the canopy was so close to the top of a boxcar as to provide insufficient clearance for men working thereon, (2) "if you further find that the presence of said canopy was not made visible by artificial illumination during the hours when it was dark outdoors", (3) the canopy was dangerous, and defendant knew or could have known thereof," etc. The petition alleged that defendant "failed to warn and advise plaintiff of the close proximity" of the canopy to the tracks. There was no allegation of negligence in failing to warn by artificial illumination. Plaintiff concedes that "instructions must be within the scope of the pleadings and the evidence", but argues (1) that the required finding was mere surplusage, and (2) that the issue of artificial illumination was tried by both parties, without objection, as though it had been raised by the pleadings.
We do not think either of these contentions are applicable to the pleadings and evidence in this case. We have held that under the facts here presented insufficient clearance alone was not negligence, and that a failure to warn was a necessary element to make a submissible case of failure *519 to furnish a reasonably safe place to work. Hence, it follows that the failure to warn was not surplusage.
There was considerable evidence as to the lights in the yard and their respective locations, but there was no evidence of any custom of any particular method of warning workmen of insufficient clearance in these or other yards. In the case of McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 234, 227 S.W. 1047, it was held that where there was an absence of any customary method of displaying a danger signal, some other method of warning should have been employed by the railroad. In that case, the defendant undertook to show that the plaintiff had received a warning from its book of rules and also from a posted bulletin. The court there held this evidence presented a jury issue whether plaintiff had been given proper warning. And so, in the instant case, did defendant undertake to show plaintiff was warned of the danger. So, therefore, the instruction not only goes beyond the pleadings, but restricts warning to artificial illumination and, by implication, excludes all other means. It was clearly erroneous in so doing. Blackwell v. Union P. R. Co., 331 Mo. 34, 52 S.W.2d 814.
Neither can the mere fact that defendant joined in the introduction of evidence as to the extent of artificial illumination in the yards or did not object to the evidence of the lack of artificial illumination at the fertilizer plant building be construed as consent that the issue of warning by artificial illumination be tried as a ground of negligence as though it had been specifically pleaded as such. All the evidence as to artificial lighting was perfectly consistent with and competent under defendant's denial of failure to furnish a safe place to work and the plea that plaintiff's injuries were caused by his sole or contributory negligence. Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418.
Defendant's Instruction D was properly refused. It directed the jury that if it found the proximate cause of plaintiff's injuries was his own negligence in unnecessarily assuming the position he did on the moving car, or in failing to keep a lookout ahead, or if his injuries were proximately caused by the negligence of the Temple Company in maintaining the canopy, and, if so, that the negligence of defendant was not the sole cause, nor a contributing cause of his injuries, then plaintiff could not recover. Defendant says it meets every requirement of a sole cause instruction, but obviously it does not. It not only fails to refer to the negligence hypothesized in plaintiff's instructions, see Steffen v. Ritter, Mo.Sup., 214 S.W.2d 28, 30, but refers to negligence of the Temple Company, concerning which there was no issue or evidence.
Because of the error in Instruction No. 1, which requires a reversal of this cause, it is unnecessary to consider the further assignments of error.
The judgment is reversed and the cause remanded.
All concur.