ABRAHAM MORRIS v. EDWARD PRYOR, Receiver of WABASH RAILROAD COMPANY, Appellant.

In Banc, December 1, 1917.

1. **NEGLIGENCE IN CONSTRUCTION OF TRACK**: Curve Near. Coal Bin. A spur track passed along the north side of a poultry house in a westerly direction, thence across the street on a thirty-degree curve to the south, which ended in a tangent a few feet west of the street, and extended from that point a distance of fifty-two feet along the north side of a coal bin of an electric light plant, in an almost straight line and at a practically uniform distance of four feet from the bin. The effect of the curved track was that a car forty-two feet long standing at the coal bin in a position to be unloaded stood at a distance sufficient to permit a switchman to stand or move between the car and the bin with safety, but when the car moved eastward, at his signal, its middle portion, owing to the curve in the track, swung in towards the inside of the curve and slowly moved nearer to the coal bin, and crushed him between the car and bin. *Held*, that under the circumstances the construction of the curved track so as to permit the switchman to be injured in the manner he was injured was not a neglect of the master's duty to provide a reasonably safe place in which the servant might perform his appointed work, there being no showing that the company did not do its best, consistently with successful operation, in the location and construction of the track on the line adopted.

2. ———: ———: **Reasonably Safe: Absolute Safety.** The term "reasonably safe" does not mean that a railroad company is required to construct its track, in its relation to the physical features of the electric light plant it is required to serve, in such a manner that the operation of trains thereon will be absolutely safe, even to careful employees.

3. ———: ———: **Assumption of Risks.** Railroad trainmen are surrounded with dangers to life and limb under the most favorable circumstances, the risk of which they assume in their employment.

4. ———: ———: ———: **Primary Duty of Railroad: Latitude of Judgment in Performance.** The primary duty of a railroad is to render that service to the public which the law imposes as an incident to the calling and the exercise of its franchise. In the matter of supplying appliances to meet that duty under diverse conditions it must be allowed a latitude of judgment, since variable

conditions are important stones in the foundation of the doctrine of assumption of risk; and if its officers and servants undertake the work of performing that duty, under circumstances charging them with full knowledge of all the dangers and difficulties incident to its successful prosecution with the facilities available, without complaint or other expression of dissatisfaction, they assume the risk of injuries resulting from the use of such facilities, even though they would not have occurred in the use of some other instruments or situation designed to accomplish the same purpose.

5. ———: ———: **Experienced Employee: Heedlessly Choosing Dangerous Situation.** The railroad company cannot be charged with negligence in constructing a curved spur track leading to a coal bin of an electric light plant, if the injured switchman, foreman of the crew, experienced in the performance of his work, knowing the tendency of the middle portion of a car to swing in towards the inside of the curve, heedlessly took his position between the car and the bin, when the other side was safe and customarily used, and gave the signal to move, and heedlessly turned his back to the car when it began to move, and was crushed when the car swung in towards the bin, when if he had exercised prudence for his safety a few steps would have enabled him to avoid the accident.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED.

*J. L. Minnis, N. S. Brown* and *J. A. Collet* for appellant.

Defendant's demurrer to the evidence should have been sustained, because: (1) There was no proof of actionable negligence of the defendant. Railroad v. Newell, 196 Fed. 868; Tuttle v. Railroad, 122 U. S. 189; Reece v. Railroad, 239 U. S. 463; Miller v. Railroad, 185 Mich. 432; Haring v. Railroad, 137 Wis. 367; Eliott v. Railroad, 204 Mo. 17; Coin v. Lounge Co., 222 Mo. 506. (2) Defendant furnished to plaintiff a proper and safe place in which to perform his duties, and he voluntarily selected a dangerous place in which

to perform the same, and was thereby injured. Cases supra; White, Personal Injuries, sec. 358; Moore v. Railroad, 146 Mo. 572. (3) The maintenance of the spur track in its relation to the coal bin, as shown by the evidence, was not the proximate cause of plaintiff's injuries. Railroad v. Wiles, 240 U. S., 448. (4) Plaintiff failed to prove a cause of action under the Federal Employers' Liability Act. Railroad v. Behrens, 233 U. S. 478; Railroad v. Carr, 238 U. S. 260; Pennsylvania Co. v. Donat, 239 U. S. 50; Hench v. Railroad, 246 Pa. 1; Molliter v. Railroad, 180 Mo. App. 84. (5) Plaintiff assumed the risk of injuries arising from the alleged improper maintenance of the track. Cases supra; Railroad v. Horton, 233 U. S. 492; Jacobs v. Railroad, 241 U. S. 229; Bradley v. Railroad, 138 Mo. 293; Hager v. Railroad, 207 Mo. 302; Moore v. Railroad, 146 Mo. 572; Railroad v. Jones, 241 U. S. 181; Southern Ry. v. Gray, 241 U. S. 339.

*M. J. Lilly* and *O. C. Phillips* for respondent.

(1) There was proof of actionable negligence of defendant. George v. Railroad, 225 Mo. 364; Murphy v. Railroad, 115 Mo. 118; Charlton v. Railroad, 200 Mo. 437; Fish v. Railroad, 263 Mo. 106. (2) Plaintiff was not guilty of negligence in using an unsafe way furnished by the defendant unless the danger was obvious, even though there was a safer place in which he might have worked. Cases supra; Boehm v. Electric Co., 179 Mo. App. 663; Hutchinson v. Safety Gate Co., 247 Mo. 116. (3) The maintenance of the track in such situation that employees were endangered by the proximity of the building was the proximate cause of the injury. Cases supra. (4) Plaintiff proved a cause of action under the Federal Employers' Liability Act. The test is: ''Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?'' Shanks v. Railroad, 239 U. S. 556; Mondou v. Railroad, 223 U. S. 1; Pedersen v. Railroad, 229 U. S. 146; Railroad v. Behrens, 233 U. S.

473; Railroad v. Seale, 229 U. S. 156; Railroad v. Carr, 238 U. S. 260. (5) Plaintiff did not assume risks arising from the improper maintenance of the tracks which were not obvious to him and of which he had no knowledge or notice. Railroad v. Proffitt, 241 U. S. 462; Railroad v. Horton, 233 U. S. 504.


BROWN, C.—This suit was instituted in the circuit court of Randolph County against the receivers of the Wabash Railroad Company, returnable at the February term, 1914, of that court. The appellant is the only remaining receiver. That portion of the petition charging the circumstances of the injury is as follows:

"That at all the times hereinafter mentioned the above named receivers were common carriers engaged in interstate commerce; that is, the transportation of passengers, goods and merchandise from points within the State of Missouri to points in other States of the United States and from points in other States in the United States to Moberly and other points within the State of Missouri. That defendants now have in the city of Moberly, county of Randolph, State of Missouri, offices and agents in charge thereof for the transaction of their usual business.

"Plaintiff further states that on the 25th day of July, 1913, and for some time prior thereto, he was a switchman in the employ and service of the receivers of the Wabash Railroad Company as aforesaid; that he was employed in and about the railroad yards and tracks operated by the receivers in Moberly, Missouri; that as a switchman it was his duty to and he continually was engaged in handling cars, both interstate and intrastate indiscriminately, and that at the time of his injury hereinafter set forth he was engaged in the movement of cars used both in interstate and intrastate commerce, some of which were loaded with merchandise and poultry from points without the State of Missouri, to Moberly, Missouri, and some of which were being loaded with merchandise and dressed poultry destined to points outside the State of Missouri.

272 Mo.—23

"Plaintiff further states that in connection with the aforesaid railroad yards and lines of railway, defendants operated and maintained in Moberly, Missouri, a side-track or spur track extending from the yards and main line of said railroad company up to and past a coal bin belonging to the Moberly Electric Light Company. That the side of the coal bin adjacent to the said spur or side track extended in a straight line while the said spur or side track maintained and operated by the defendants herein extended in a curve, both before and while passing the said coal bin; that the construction of said coal bin and track in reference to each other was such that a car standing at said coal bin in a position to be unloaded stood at a distance sufficient to permit a man with perfect safety to stand or move between the side of the car and the side of the coal bin, but that when a car standing as aforesaid was moved forward, that is, toward the connecting tracks of the defendants herein, the curve in the tracks in connection with the straight side of the coal bin caused the side of the car to be brought in toward and close to the side of the coal bin.

"Plaintiff further alleges that on the 25th day of July, 1913, this plaintiff, in the due course and discharge of his employment in the service of the defendants herein, was required to go in upon this spur or side track described herein and remove an empty coal car standing at the side of the aforesaid coal bin in the position hereinbefore referred to; that at the time he was engaged in removing this car and in connection therewith he was engaged in handling and moving six or seven other cars, some of which were being used in interstate commerce at that time. That this plaintiff in person and in the due discharge of his employment and duty as aforesaid, made the coupling between the car standing at the coal bin and the cars which were being handled at the same time; that after making the coupling this plaintiff was standing between the side of the coal bin and the car in a position of apparent safety, the tendency of a moving car to be drawn up against the side of the coal bin not being ap-

parent to a man placed as this plaintiff was. Plaintiff further alleges that he had been in the employ of the defendants herein only for a short time and had never been in on this track before and was not aware of the dangerous conditions existing at that point; that he had never in his twenty years' experience as a switchman seen a building and track constructed in the dangerous manner in which this coal bin and adjacent track were constructed. Plaintiff further states that after makin₃ the said coupling and stepping back into a place of ap parent safety he, as was his duty, gave a signal to the other employees working with him, to move ahead or out toward the connecting lines of this defendant; that said signal was communicated to the engineer in charge of the engine engaged in moving these cars, and in response thereto the said cars were moved forward, and on account of the conditions hereinbefore described, the car which had been standing at the coal bin moved forward and at the same time the side thereof was quickly drawn in toward the coal bin before mentioned, and this plaintiff, without any fault or negligence on his part, was caught between the side of the moving car and the side of the coal bin and severely injured, as hereinafter more fully set forth. Plaintiff further states that the conditions with reference to the construction of the track and coal bin had existed for a long time and were well known, or by the exercise of ordinary care could have been known, to these defendants. Plaintiff further says that defendants were negligent in constructing and maintaining said spur or switch track with reference to said coal bin in the manner and condition hereinbefore set out, and that he was injured thereby and in consequence thereof.''

The answer was a general denial, supplemented by pleas of contributory negligence and the assumption by his employment of the risk of the injury, upon which pleas issue was duly joined.

At the trial during the same term a verdict was returned for $10,000, upon which the judgment was entered from which this appeal is taken.

The plaintiff, at the time of the accident, which occurred July 25, 1913, was a switchman employed by the receivers in the Wabash Railroad yards at Moberly, Missouri, where he had been working four months and six days. He was thirty-nine years old, had been engaged in that kind of work for nineteen or twenty years, and in his testimony questions neither his experience nor skill. The yards in Moberly were extensive, containing many platforms for receiving and discharging freight, classified as clearance and non-clearance platforms, the latter term being used to describe those so near to the tracks which served them that there was not room to stand between cars and platform. There were many of these in the yard. It is the duty of the switchman to ascertain whether there is clearance or not. This accident occurred in removing cars from a commercial track serving the electric light plant of the city. This plant was situated on the west side of Dameron Street, having a coal bin in the northeast corner extending about fifty feet southwesterly from the street along the line of the track. The track passed westerly across the street on a curve to the south of thirty degrees, past the coal bin, straightening approximately to a tangent a short distance west of the street and running thence parallel with its north wall, which consisted of a bulkhead constructed of posts driven in the ground and planks spiked to the inside of them. After passing the coal bin it extended along the north wall of the electric light building and practically parallel thereto for a distance considerably greater than the width of the bin.

At the time of the accident there were five cars standing on the spur, the most westerly one of which was the forty-one foot coal car by which plaintiff was injured. It stood at the coal bin, the east end being a few feet west of its northeast corner at Dameron Street and near the point of the thirty-degree curve extending east. This car, which had been unloaded, was to be set out of the spur. There were four other cars on the spur east of it, the nearest of these being another empty coal car belonging to the Wabash, standing in Dameron Street

nearly a car-length east of the one at the bin. Mr. Morris was foreman of the switchmen engaged in the movement and directed it.   He stood at the east end of the car on the south side, next to the bin. Mr. Duggins, one of his switchmen, stood east of him in Dameron Street on the same side of the track, while another switchman was still further east on the top of a car.   To make the movement it was necessary  that the four  other  cars  should  be coupled to pull out the long coal car. This was done and the engineer moved them back to the place where Mr. Morris stood, who saw that the coupling was made and then told Mr. Duggins to go ahead.   The latter signaled to the switchman on the top of the car, who transmitted it to the engineer, who began to pull out. Mr. Duggins was looking at Mr. Morris, who was giving directions as to the movements to be made, and when the long car swung into the curve so that its side began to approach nearer and nearer to the bulkhead he saw the danger and promptly began to try to reach the engineer with signals to stop, which were as promptly seen and obeyed, but too late to save Mr. Morris, who, in the act of trying to climb above the car sill, was caught about the pelvis and badly injured, both internally and externally, his life having apparently been saved by the promptness of Mr. Duggins in seeing the danger and acting, and of the engineer in responding.

It was optional with the switchman as to which side of the cars they should stand in doing this work. It was customary, all conditions being the same, to do the work on the right hand side, which is the engineer's side of the engine, where, with a clear view he could be seen, or if, on a curve to the left, to do it inside the curve, where the engine would be visible. In this case the view was equally obstructed on both sides.

In the view we take of the legal aspect of the case the foregoing facts, which are taken from the testimony given and offered by the plaintiff, and are undisputed, are sufficient to its complete understanding, although we shall feel at liberty by way of illustration to refer to

other statements of respondent in the course of our opinion.

I.   This case is founded upon the Federal Employers' Liability Act to recover from the defendant receiver damages for injuries sustained by the plaintiff, a switchman in his service, from being crushed between the side of a coal car and the bin into which it had just been unloaded. The jury were properly instructed as to the distribution of damages under that act in cases of mutual negligence, so that the only question for our consideration is whether the receivers were negligent as to the plaintiff in the maintenance of the track at which the injury occurred. The track was a spur constructed to give service to two industries. The first of these and the nearest to the connection of the spur with its lead in the railway yard was the Stamper poultry house and the other an electric light plant having a coal bin on the track. A city street extending north and south lay between these two establishments, apparently ending against the railroad yard immediately north of them. The spur passed along the north side of the poultry house in a westerly direction, thence across the street on a thirty-degree curve to the south, which ended in a tangent a few feet west of the street, and extended from that point along the north side of the coal bin and power house of the light company in a practically straight line. Throughout this whole length from the street west it maintained a practically uniform distance of something over four feet from the coal bin and north wall of the power house, the bin occupying about fifty feet of that distance . The maintenance of the track in this relation to the coal bin constitutes the only negligence charged in the petition or relied on by respondent in his argument. It is claimed by respondent to have been negligent because a car being removed from this track upon striking the point of the curve near the west line of the street was sharply deflected to the right by the curvature, so that while this deflection did not bring

*Margin note:* Negligence in Construction of Track.

either the wheels or that part of the body which rested immediately over them any nearer to the wall of the coal bin than when it stood on the straight track, it did swing the body of the car between the wheels to the right, so that the middle of the car, when at the point of the curve, instead of having its center line over the center line of the track, as is the case when it moves on a straight track, was much to the right of that position. It is plain that this departure from the line of the track would increase as the car increased in length between its trucks. In this case the car was forty-one feet long and the movement of its side toward the coal bin was so great that it caught the plaintiff, who was standing at that place and crushed him.

The respondent says, in substance, that it was the duty of the railway company to make the place in which he was required to do his work reasonably safe, and that permitting the conditions which caused the car to come so near the bin when, by his direction, it was moved forward, was a neglect of this duty. He makes no suggestion as to how the track should have been constructed at that point, but, as we understand him, invokes the rule applicable to those cases in which by reason of the obscurity of a dangerous condition the servant is led into it in the performance of his duty and injured.

II.   In the construction of this track and in using it in the service for which it was designed, the railroad company and its receivers were acting in the performance of a public duty exacted by law. They not only had the right, but the duty rested upon them under proper conditions to put its track to this plant and to give it the service for the performance of which the railroad company was incorporated. That this work was not without difficulty is shown by the nature of the curve described in the pleadings and evidence. A thirty-degree curve in common talk as well as in technical parlance, means a curve with thirty degrees of tangental deflection in each one

**Reasonably Safe.**

hundred feet. From the standpoint of practice its nature is illustrated by this case. From the standpoint of mere curiosity we may imagine that a track so extended would describe a complete circle on a block of ground approximately four hundred feet square. There is nothing in the evidence to indicate that the company did not do its best, consistently with successful operation, in the location and construction of this track on the line that it adopted, and we are compelled to presume it did. It was not required to so construct this track in its relation to the physical features of the industry in such a manner that its operation would be absolutely safe, even to careful employees. Even if we use the term reasonably safe it is a mere relative one, for safety in the operation of a railroad track has a different meaning from the same word when used with reference to the operation of a dry-goods store. Railroad people, like those who go down to the sea in ships, are, as official statistics show, surrounded with dangers to life and limb under the most favorable conditions, the risk of which they assume in their employment. This assumption of risk ordinarily incident to this particular employment we have lately said "is a living part of the law." [Patrum v. Railroad, 259 Mo. 109, and cases cited.]

III. The primary duty of the public carrier by rail is to render that service to the public which the law imposes as an incident to the calling and the exercise of the franchises conferred for that purpose. The work is strenuous, involving the use of powerful and dangerous structures and machinery, requiring the highest skill and greatest care in their construction, maintenance and operation. Approach to the warehouses and docks of its patrons so that all parts of them may be utilized, often calls for the exercise of the highest degree of engineering skill. The curvature of tracks is sometimes the most difficult element of this problem, which involves not only the convenience of both parties, but the availability, use and value of the property to be served. The curvature of the tracks af-

Degree of Care.

fects not only the practicability of pushing loads over them with the power available, but the maintenance of the tracks themselves against the tendency to spreading and displacement from the operation of the very forces we are considering as the cause of this accident. A thought suggests these natural difficulties, and that to some extent at least they can be better met by the use of the skill available to the carrier than by the judgment of juries.

When we also consider that some of these carriers, although necessary to the public, must establish and maintain their service upon the limited resources of a small traffic which must therefore be handled, if at all, with inexpensive grounds, structures and appliances, while others with immense traffic that must be rapidly as well as safely handled are able to keep their property in a condition commensurate with its requirements, we are impressed with the latitude of judgment necessary to meet such diverse conditions, and that they are important stones in the foundation of the doctrine of assumption of risk as administered in this State. The carrier has the right to use its own judgment as to the manner in which it can best perform its duties with the means at its disposal, and its officers and employees represent it in the performance of their duties. If they undertake the work under circumstances charging them with full knowledge of all the dangers and difficulties incident to its successful prosecution with the facilities available, without protest, complaint or other expression of their dissatisfaction, they assume the risk of injuries resulting from the use of such facilities, even though they would not have occurred in the use of some other instrument or situation designed to accomplish the same purpose. In such cases there is no negligence on the part of the employer, for it has fully performed its undertaking although the same act might have been negligence as to another who had not assumed the risk lying in the existing conditions.

IV. The plaintiff at the time of this accident had had nineteen years' experience in the performance of such work, in which he had been employed by some of the great railway companies of the country. He stated that he had long before observed the tendency of the body of a car to move from its position direct-

Plaintiff's Experience ly over the track toward the inside of a curve upon which its wheels were moving, and even had he not observed it, a man of such experience and skill would be held to know the operation of so simple a law of nature. In his testimony he said that he had not kept it in mind. The situation lay directly before him. The point of the curve around which the wheels were about to pass lay right at his feet, and he would have known had he thought one moment, that the body of the car would soon be swung toward the bulkhead by which he stood. Had he raised his eyes toward the car as it slowly began to move he would have seen it slowly come toward him. It was but two or three steps to the open street and absolute safety toward which the open way lay right before him. Instead of observing this he turned his back toward the track and the car, and stood talking with Mr. Duggins until caught. Even when he told Mr. Duggins to pull out, he had his face to the coal bin and his back to the car. Had he even taken the trouble to look at the car in front when it backed in for the coupling he could not have helped seeing indications of the same phenomenon.

V. There is nothing in the testimony to explain why the plaintiff went in on that side of the car to do the coupling. He was the foreman in charge of the operation, and could do as he pleased. The engine could not be seen from either side of the car, and

Choosing Dangerous Place. Mr. Duggins, who was plaintiff's assistant and testified for him in the case, testified that although he had previously worked in the same capacity at the same place he had never worked on the south side of the track before; that it was customary to work on the safe side; that it was the switch-

man's duty not to wait for somebody to tell him to take the safest place to work; and in doing a coupling where there is not sufficient room to make safety certain he should move out to a place of safety before giving the signal to move. All this testimony relates to rules and practices which illustrate the fact that the plaintiff, master of the situation and director of the entire movement, courted the accident by not only unnecessarily assuming the only position in which the danger existed, but by unnecessarily remaining there after the reason he assigns for taking it had ceased.

Although the respondent places his right to recover solely upon the maintenance of the track in the situation described, and cannot place it elsewhere because in all else he was the *alter ego* of the appellant directing the manner in which its work should be done, he makes no suggestion as to how the track could have been changed to serve the industry as then situated. The inference is that it should have required as a condition to putting in the service, the vacation of the land on which the northeast corner of this coal bin was situated. The answer is that this engineering and economic proposition had been considered and determined, and respondent was employed to obviate this expense and sacrifice of storage capacity by operating the spur in the condition in which he found it, which it is admitted by his evidence could have been easily done in perfect safety. His nineteen years of experience recommended him for the work. The situation was open to his inspection and the conditions which relate to this accident were simple and evident. He represented the appellant in everything connected with this service, and if a change was needed it was his duty to suggest it and if he did not, to perform the duty which he had assumed to do at his own risk. We do not think it necessary to encumber this record with a list of our own authorities upon this point, as many of them are collected and cited in Patrum v. Railroad, supra. We will not refrain, however, from calling attention to Haring v. Railroad, 137 Wis. 367, in which the Supreme Court of

that state deals with a similar situation. As much as we pity the respondent, whose heedlessness in a work requiring constant watchfulness has brought upon him this injury, we cannot see that the appellant, by negligence, has contributed to it in any degree.

VI. The respondent has cited the following cases in which this court has held that the duty of a railroad company to exercise ordinary care to provide reasonably safe conditions in which the employee may Other Cases do his work, is not well performed when it Distinguished. permits stand pipes, telegraph poles, fences, buildings and other structures to be maintained so close to its tracks that employees, being on the outside of its moving cars or engines in the performance of their duties, are crushed by them: Fish v. Railroad, 263 Mo. 106; George v. Railroad, 225 Mo. 364; Charlton v. Railroad, 200 Mo. 413; Murphy v. Railroad, 115 Mo. 111. None of these cases relate to employees who heedlessly place themselves between such obstructions and the track and signal the cars to pass them while in that position. Nor do they hold that the railroad company may not adopt such methods in the performance of its public duties as will give the best service to its patrons within the reasonable limits of its ability with safety to its employees; nor that, when it employs experienced people to operate such facilities it has not the conventional right as between itself and such employees, to rely on them to use the obvious means it places at their disposal to secure their safety.

The judgment of the Randolph Circuit Court is reversed.

*Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted by the Court in Banc as the opinion of the Court in Banc. All the judges concur, except *Bond, Woodson* and *Williams, JJ.,* who dissent.