KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, and Chicago, Milwaukee, St. Paul & Pacific Railroad Company, a Corporation, Respondents,

v.

PAYWAY FEED MILLS, INC., a Corporation, Appellant.

No. 47698.

Supreme Court of Missouri,

Division No. 1.

July 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Sept. 12, 1960.

1

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Paul E. Vardeman, Jr., Kansas City, for appellant.

William H. Curtis, Martin J. Purcell, Morrison, Hecker, Buck & Cozad, Kansas City, for respondents.

HOLMAN, Commissioner.

S. A. Price, a switch foreman employed by plaintiffs, sustained serious injuries to his legs on January 4, 1955, as a result of insufficient clearance between defendant's movable dock and a boxcar upon which he was riding. Plaintiffs paid Price $15,000 in settlement of his claim against them under the F.E.L.A. 45 U.S.C.A. § 51 et seq. In this action, based upon the theory of implied indemnity, plaintiffs obtained a judgment against defendant for the amount paid Price, i. e., $15,000. Defendant has appealed. Since the amount in dispute exceeds $7,500, and the notice of appeal herein was filed prior to January 1, 1960, we have jurisdiction of this appeal. Article V, Section 3, Constitution of Missouri, 1945 V.A.M.S.; Section 477.040, as amended Laws 1959, S.B.No. 7, P.P. Vol. 27 V.A. M.S.

The defendant's building was located just north of Third Street in Kansas City, Missouri. Its loading platform was on the east side of the building. Railroad cars used by defendant were loaded and unloaded from switch tracks 13 and 14 which ran generally north and south on the east side of the building. The surface between tracks 13 and 14 was paved with concrete. In the area between the two tracks were several sections of movable docks. The platform of these docks was the same height as the floor of a boxcar and each section was about six feet wide and ten feet long. These docks were quite heavy and several men were required to move a section thereof.

Track 14 was located next to defendant's loading platform and track 13 was the next track to the east. These tracks were joint-ly operated and maintained by plaintiffs under a "joint agency agreement" and employees engaged in switching operations thereon were the joint employees of the plaintiffs. While these tracks were referred to as public team tracks the evidence was that they were never used by anyone except defendant. Several times each day cars used by defendant would be switched onto or removed from those tracks. In loading cars spotted on tract 13 three steel gangways (about five feet in length) would be used. One would be used to connect defendant's loading platform with the door on the west side of a car on track 14, another would be placed between the east door of that car and a section of the movable dock, and the third would connect the dock and a car on track 13. Defendant's employees would use hand trucks in moving the feed through the car on track 14 to the movable dock and thence into the car on track 13 which they were loading. A driveway, occasionally used by trucks, extended from Third Street (across the tracks in question) to a grain bin on the east side of defendant's building. When that driveway was used it was necessary to move at least one section of the movable docks that were situated between tracks 13 and 14.

Mr. Price was injured at about 4:15 a. m. on January 4, 1955. He testified that there were three cars on track 13; that after they had completed spotting the cars on track 14 they desired to remove the loaded center car from track 13 and replace it with an empty car, and, to do so, they had to pull out the north car and the center car; that he was working on the west side of these cars; that he pulled the pin between the middle and rear cars and gave the backup signal to a switchman farther north who relayed it to the engineer; that switchman Jones was on top of the middle car and because he was starting to descend the south ladder on that car he (Price) ran north and mounted the foot stirrup on the north end of that car; that "it wasn't pitch dark down there but it was dark; it was raining a little bit"; that no direct light was

shining in that area. Mr. Price testified further that the switching movement was going three or four miles per hour and that it had moved about 60 feet between the time he gave the backup signal and his injury; that he had walked about 40 feet, and after he got on the car and it had moved about 20 feet, he heard Jones shout for him to jump; but that he had no chance to jump and his legs were caught between the dock and the car; that if he had jumped when Jones shouted he "would have been cut all to pieces." He was able to hang onto the car until Jones signaled for the engineer to stop, and was then taken to the hospital. Mr. Price stated that if he saw the dock before it hit him it was only for a "split second"; that he had never before seen a section of the dock that was too close to the track, although at one time a crew he was working with had refused to switch the track because the docks were too close; that he had seen defendant's employees move these docks but had never seen any railroad employees do so.

Hubert Jones testified that he had been a member of crews that had regularly switched tracks 13 and 14 for several years prior to the time Mr. Price was injured; that only cars for the use of defendant were placed on these tracks and that the docks between these tracks were used exclusively by defendant; that he had never seen any railroad men move those docks; that on the occasion in question he was on top of the middle car and when the movement started he released the brake on that car and then started down the ladder on the south end of the car; that he looked up and saw that Price was going to hit the dock and "hollered" for him to jump; that Price was struck by the dock immediately thereafter; that the point of contact was the northeast corner of the northernmost dock; that Price was not looking toward the north but was looking in toward the car; "he always stares right at the car."

Another member of the switch crew was Robert F. Lemley. He worked near the engine and one of his duties was to pass

signals on curves. He testified that on the occasion in question he hooked the front of the engine onto the north car on track 13; that the north end of that track is curved toward the east and the engineer was out of sight of the two men on the middle car; that he stepped out where he could see that car and received a backup signal from either Price or Jones which he in turn gave to the engineer; that he then got on the side of the engine and did not know that anything unusual had occurred until the engine stopped and he then looked back and saw that Mr. Price had been injured.

Walter McEntire, assistant roadmaster for Kansas City Southern, testified that seven or eight months before the instant casualty he had talked with Mr. Morgan, the foreman at defendant's docks, and had told him that one of the movable docks was too close to the track and endangered the switch crew. Morgan agreed to have the dock moved and did so. About two months later he found another dock too close to the track and contacted defendant's superintendent, Mr. Alley, who directed him to see the dock foreman, Mr. Morgan; that he saw Mr. Morgan who called two or three men and moved the dock back while he was present; that on the morning after Mr. Price was hurt he went with the assistant engineer, Mr. Thrasher, and they measured the position of the dock and reported the incident to Mr. Alley.

J. W. Thrasher, assistant engineer for Kansas City Southern, testified that he went to the scene of the casualty shortly after 8 o'clock on the morning of the occurrence; that he made measurements there and found that the dock was 5½ feet from the center of the track; that the standard base clearance is 8½ feet from the center of the track, the distance between the rails is 4 feet 6½ inches, and the average boxcar has an overhang of 2½ feet beyond the rail; that there were marks in the dust indicating that the dock had been pushed back several inches away from track 13; that he had never seen track 13 or the docks on the

west side thereof used by anyone except defendant.

Plaintiff read into evidence two answers made by defendant to interrogatories which disclosed that defendant's employees had worked until 12:30 a. m. on January 4 and that during the remainder of the night defendant had a night watchman patrolling the building.

The only witness called by the defendant was W. L. Alley, its vice-president in charge of traffic. He testified that the driveway over tracks 13 and 14 had not been used for several days prior to the time Price was injured; that there were lights on the west side of the defendant's building which burned all night; that a representative of Kansas City Southern had spoken to him about the clearance between the docks and the cars at some time before the occurrence in question but that he did not learn of the injury to Mr. Price until about a year after it had occurred; that since he had become connected with the defendant in 1946 he had never seen anyone move the docks between tracks 13 and 14 except employees of the defendant; that he did not know who owned the docks but that the defendant had maintained them and had used them exclusively.

Defendant in its answer admitted that "the sum of $15,000 was a reasonable settlement of Price's claim."

In Instruction No. 1 offered by plaintiffs the negligence of defendant was submitted under the res ipsa loquitur doctrine. Therein the jury was also required to find that the negligence of plaintiffs was "passive and secondary" and that the negligence of defendant was "active and primary." The court at the request of defendant gave three instructions which directed a verdict for it. Instruction No. 5 predicated such a verdict upon a finding that plaintiffs failed to use ordinary care to inspect the clearances and to move any obstruction and "was thereby actively neg-

ligent." Number 6 submitted the defense that in the exercise of ordinary care plaintiffs' crews could have known of the position of the dock in time to have warned Price, and Instruction No. 7 was based on the contributory negligence of Price in failing "to keep a lookout in respect to the dock referred to in the evidence."

The first contention of defendant is that the trial court erred in overruling its motion for a directed verdict offered at the close of all the evidence. Before discussing the particular points upon which that contention is based we deem it appropriate to consider generally the principle of indemnity here involved and its application to the facts of this case. "The vast growth of negligence law has markedly changed the characteristics of negligence actions. Legal negligence no longer embodies a concept of misbehavior just short of the criminal or the immoral. The courts have, therefore, had to find a way to do justice within the law so that one guilty of an act of negligence—affirmative, active, primary in its character—will not escape scot-free, leaving another whose fault was only technical or passive to assume complete liability." Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co., 343 Ill.App. 148, 98 N.E.2d 783, 787. This court has heretofore stated that "It is the general rule, where one person has been exposed to liability and compelled to pay damages on account of the negligence of another, the first has a right of action against the other for indemnity where the parties are not in *pari delicto*. In cases where one party creates the condition which causes injury and the other does not join therein but is exposed to liability on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other for indemnity does not apply." Barb v. Farmers Insurance Exchange, Mo.Sup., 281 S.W.2d 297, 304. It has often been said that the negligence of the party responsible for the dangerous condition is active and primary while the negligence of the other is passive and

secondary. The principle of indemnity stated in the Barb case has been codified and restated as follows: "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition." Restatement of the Law of Restitution, Section 95.

A number of Missouri cases in which a party held liable for passive or secondary negligence secured indemnity from the active wrongdoer are summarized in the case of State ex rel. Siegel v. McLaughlin, Mo. App., 315 S.W.2d 499, 502, as follows: " * * * where a landlord is held liable by reason of the dangerous condition of his premises he may recover indemnity from the person who actually created the dangerous condition. Barb v. Farmers Insurance Exchange, Mo.Sup., 281 S.W.2d 297. A city held liable by reason of the dangerous condition of a sidewalk may recover from an adjacent property owner whose negligence created the hazardous condition. City of Springfield v. Clement, 205 Mo.App. 114, 225 S.W. 120. A principal who without personal fault is held liable for the acts of his agent may recover indemnity from said agent. State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481. One admittedly liable for injuries to a servant due to a defect in a scaffold of which defect he is ignorant may recover indemnity from the manufacturer of the scaffold for the amount paid in settlement. Busch & Latta Painting Co. v. Woermann Construction Co., 310 Mo. 419, 276 S.W. 614. Where a party wall is rendered dangerous by a fire and collapses, injuring persons, the municipality, after being held liable for failure to abate the nuisance, has an action over against the owners. Swentzel v. Holmes,

dictum, Mo.Sup., 175 S.W. 871, L.R.A. 1915E, 926. A telephone company which sets poles in the highway was held liable to the city for any damage it might be compelled to pay a party injured by reason of a defect in the street caused by the negligence of the telephone company. Kinloch Telephone Co. v. City of St. Louis, 268 Mo. 485, 188 S.W. 182. Where a railroad company constructs its tracks across a city street and fails to keep the crossing in repair, and the city is held liable for injuries resulting therefrom, the city may recover from the railroad. City of Independence v. Missouri Pacific Ry. Co., 86 Mo.App. 585. Where a judgment was recovered against a city by one whose horse was injured by an unguarded opening in a street, the city was held to have a cause of action against a contractor for his wrongful neglect to guard the openings as required by ordinance. City of Columbia v. Malo, Mo.App., 217 S.W. 625. A city held liable in damages because of an injury caused by a defective grating in a sidewalk maintained by an abutting property owner may recover against such owner. Kilroy v. City of St. Louis, 242 Mo. 79, 145 S.W. 769." See also the discussion upon the subject of indemnity in the case of McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh P. Co., Mo.Sup., 323 S.W.2d 788[6].

We think the factual situation presented in the case at bar is a classic example of the type of case the authors had in mind in formulating Restatement, Section 95, supra. A jury could reasonably have found from the evidence (1) that defendant had created a dangerous situation in permitting its movable dock to be so located that there was not sufficient clearance (although having been previously notified by plaintiff to maintain a certain minimum clearance) so that plaintiffs' employee Price could safely pass said dock while riding upon a boxcar in furtherance of a switching operation and was thus guilty of active negligence, and (2) that plaintiffs were liable to Price under the F.E.L.A., supra, for their passive negligence in failing to discover the position of

said dock and move it so as to provide sufficient clearance or to have warned Price and thereby avoided his injury.

Two cases have been cited wherein the facts were similar to those here involved. In Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902, 20 A.L.R.2d 695, an employee of the lumber company placed a wooden cart so near the track that an employee of the railroad was caught between the caboose and the cart. The railroad company was held to be entitled to recover from the lumber company for the amount it had paid its employee in settlement of a judgment he had obtained against it under the F.E.L.A. While the Booth-Kelly suit was based upon a contract of indemnity, the court stated that the plaintiff would have been entitled to recover even in the absence of a contract. Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co., supra, involved the question as to whether the complaint stated a cause of action. The complaint alleged that defendant parked a truck so close to the track that a switchman was injured when caught between the truck and a boxcar; that the employee made claim under the F.E.L.A. and the railroad had paid him $15,000 in settlement of his claim. The court held that the complaint stated a cause of action against the transfer company for recovery of the amount so paid by the railroad company.

■ The first reason advanced by defendant in support of its contention that plaintiffs failed to make a submissible case is that plaintiffs' negligence was established in two respects and hence they are barred from recovery. Our attention is directed to the fact that in plaintiffs' Instruction No. 1 the jury was required to find "that the plaintiff railroads by the reasonable use of their facilities and employees could have discovered and avoided said danger and injury to Price then you should find that the plaintiff railroads were liable to the said Price under the Federal Employers' Liability Act for his injuries." That finding is said to establish that plaintiffs were guilty of independent negligence. The instant contention would have afforded no basis for the sustention of the motion for a directed verdict. It was necessary for the jury to find that plaintiffs were guilty of negligence. Otherwise, plaintiffs would not have been warranted in making a settlement with Price. But the jury was further required to find that such negligence was passive and that defendant was guilty of active negligence. Passive negligence will not bar recovery of indemnity from a joint tort-feasor whose active negligence created the dangerous condition.

■ Defendant also asserts in its brief that "Price failed to keep any lookout when by keeping a lookout he could have seen the obstruction in time thereafter to have avoided his injury, and Price was therefore negligent as a matter of law, which negligence is imputed to plaintiffs under the rule of respondeat superior." We are of the view that that contention is likewise without merit. The jury was instructed to return a verdict for defendant upon a finding of contributory negligence on the part of Price in failing "to exercise ordinary care to keep a lookout in respect to the dock." We do not think that Price was guilty of contributory negligence as a matter of law and hence that issue was properly submitted to the jury. Price had been involved in switching operations on tracks 13 and 14 for about ten years. In that period he had never seen one of the defendant's docks too close to the track and had known of only one such instance. It would therefore appear that there was little reason for him to suspect that one of those docks would be dangerously close to the track on the occasion in question. In that situation we cannot say as a matter of law that Price was negligent in failing to look ahead at the docks as the switching movement proceeded northwardly just prior to his injury. Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 114 S.W. 1057; Elgin v. Kroger Grocery and Baking Co., 357 Mo. 19, 206 S.W.2d 501[8].

The cases cited by defendant do not support its contention and are readily distinguishable from the instant case. Morris v. Pryor, 272 Mo. 350, 198 S.W. 817, and Ford v. Dickinson, 280 Mo. 206, 217 S.W. 294, involved fixed installations along the switch track. In Davidson v. Gardner, 7 Cir., 172 F.2d 188, and Gately v. Chicago & E. I. R. Co., 7 Cir., 138 F.2d 222, the switchman was struck by an engine when he stepped upon an adjoining track without looking for an approaching train thereon. In Chicago, St. P., M. & O. R. Co. v. Arnold, 8 Cir., 160 F.2d 1002, the negligence of the switchman was held to be a jury issue. Other cases cited are equally inapplicable.

■ Defendant also contends that plaintiffs cannot recover indemnity because they were guilty of active negligence and were in pari delicto with defendant. It is said that the positive act of plaintiffs in moving the car, coupled with the failure of its crew to keep a lookout, constituted active negligence. We have already indicated our view that the failure of plaintiffs to discover the dangerous condition would not be considered active negligence. We also are of the opinion that that fact, coupled with the movement of the train, would not amount to active negligence under the circumstances of this case. There is nothing in the transcript to indicate any contention at the trial that plaintiffs were guilty of negligence in moving the cars. The negligence of plaintiffs was in failing to discover the dangerous condition and thereafter to either move the dock or warn Price. Plaintiffs had a right to move cars on track 13 and did so several times each day. In so doing they were not guilty of negligence. In Booth-Kelly and Gulf, supra, the cars were in motion when the employee was struck by the instrumentality left too close to the track but in each case the court held that the railroad was guilty only of passive negligence. In Gulf this precise contention was considered and was rejected by the court which concluded "that mere motion does not define the distinction between active and passive negligence." 98 N.E.2d 788. We do not deem it advisable to extend this opinion by discussing the authorities cited by defendant in support of this contention. It is sufficient to state that we have examined the same and have concluded that they do not support the position of defendant when applied to the factual situation here presented.

■■ The next contention of defendant is that the court erred in giving Instruction No. 1 at the request of plaintiffs. Three reasons are advanced in support of that point. It is first said that the instruction was erroneous because the negligence of defendant was submitted under the res ipsa loquitur doctrine when "any right of defendant to control the premises and instrumentalities was at the sufferance of plaintiffs and the injury occurred at a time when plaintiffs had actual and exclusive control of the premises and instrumentalities." It is true that an essential element of the res ipsa doctrine is control or, in some instances, right of control in the defendant of the instrumentality causing injury. It is also true that one of the plaintiffs owned tracks 13 and 14 and the area between those tracks. However, the instrumentality causing the injury to Price was the dock. All of the evidence, including the testimony of defendant's vice-president, was that defendant had exclusive control of the docks and they were used and maintained by defendant only. No one had ever seen the docks moved by anyone except employees of defendant. The use and control of defendant was recognized by plaintiffs when, on two occasions, they requested defendant to keep the docks in a position so that a certain minimum clearance would be maintained. It is true that defendant had only one employee on its premises for the four-hour period immediately preceding the casualty. However, there is nothing in the testimony to indicate that the dock had been moved by a trespasser or anyone other than defendant's employees. It has been said that " ' * * * where it is established that the thing which caused the accident was within the control

of defendant, *the possibility* that some third person, who was an intermeddler and in no way connected with defendant, tampered with it so as to make it defective or dangerous does not defeat the application of the doctrine.'" Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W. 2d 509, 512. The foregoing will indicate our conclusion that there was ample evidence of defendant's exclusive control of the docks, and hence the court did not err in submitting the case under the res ipsa doctrine because of any lack of evidence as to that element.

In support of the foregoing contention defendant has cited Hart v. Emery, Bird, Thayer Dry Goods Co., supra; Wallace v. Knapp-Monarch Company, 8 Cir., 234 F.2d 853; Hall v. Lewis, 364 Mo. 1096, 272 S.W. 2d 260, and Maybach v. Falstaff Brewing Corp., 359 Mo. 446, 222 S.W.2d 87. These cases are all distinguishable from the case at bar upon the facts involved. In Hart the plaintiff was injured when struck by awnings which fell from a display table. Since it was shown to be customary for customers to handle merchandise so displayed, it was held that the res ipsa doctrine did not apply. In the Wallace case the appliance in question had not been in the possession of defendant since sold by it several years before the injury. In Hall the defendant had surrendered control of his car to a car-washing establishment before plaintiff was injured, and in the Maybach case the instrumentality was a bottle of beer which exploded seven days after it had been out of defendant's control.

The second contention of error in regard to Instruction No. 1 is that the instruction was erroneous in submitting the issue as to whether plaintiffs were guilty of passive negligence when the evidence that plaintiffs moved the cars, coupled with failure to keep a lookout, constituted active negligence as a matter of law. This is essentially the same contention as was advanced by defendant in support of its contention that its motion for a directed verdict should have

been sustained. Our discussion of that point is sufficient to indicate our view that the present contention is without merit.

■ The third contention of error concerning Instruction No. 1 is that it failed to require a finding that Price was not guilty of active negligence in connection with the switching operation. We note that the instruction required a finding that the negligence of plaintiff railroads was "passive and secondary." That finding referred to the negligence of all of the employees of the plaintiffs who were involved in that particular operation, including Price. Moreover, Instruction No. 7 directed a verdict for defendant upon a finding that Price was guilty of negligence in failing to use ordinary care to keep a lookout. Instruction No. 1 was not reversibly erroneous in the respect here complained of. Our consideration of Instruction No. 1 has been limited to the points raised by the defendant and our rulings in that regard should not be considered as a general approval thereof.

■ The final point briefed by defendant is that the court erred in giving Instruction No. 2 offered by plaintiffs which reads as follows: "The jury is instructed that the terms passive or secondary negligence mean a failure or fault that is imputed because a duty is imposed based on some legal relation between the parties or because the duty involved arises from some positive rule of statutory law or because the duty imposed is neglected by reason of a failure to discover or correct a defect or to remedy a dangerous condition caused by the act of another who is primarily responsible. The jury is further instructed that the terms active and primary negligence mean the act of creating a dangerous condition which under all the other facts and circumstances present is likely to cause injury to others." It is also said that the prejudicial effect of that erroneous instruction was accentuated by the fact that the court gave plaintiffs' Instruction No. 9 which used the terms defined in limiting defendant's contributory negligence submissions. Instruction No. 9

reads as follows: "The court instructs the jury that if plaintiff railroads were negligent in the manner set forth in Instructions No. 5, No. 6, and No. 7, if so, such negligence will bar their recovery in this action only if you find that such negligence was active and not passive as those terms are otherwise defined in these instructions."

Defendant particularly complains of the use of the phrase "primarily responsible" in Instruction No. 2. Its brief states that said phrase gave the jury a "roving commission" and that it "embraces so many questions and shades of meaning that this instruction is really no instruction at all." Defendant also states that the instruction, "by restricting active negligence to the act of 'creating a dangerous condition * * likely to cause injury,' * * * misleadingly implies that the term 'active negligence' is restricted to the charge that defendant created a dangerous situation; further by implication, said definition excludes a finding that plaintiffs, in affirmatively moving the boxcar so that a man riding thereon collided with a dock, were guilty of active negligence." In connection with the latter part of the last-quoted contention we consider it apropos to state that defendant did not offer any instruction which contained a submission of the theory that the act of plaintiffs in moving the boxcar constituted negligence of any type.

Instruction No. 2 and the definitions therein contained should be considered in the light of the evidence and issues in this particular case. When so considered we are inclined to the view that the definitions are reasonably accurate and would not mislead the jury. If defendant desired additional definitions or wished to supplement those given it had the privilege and duty to offer instructions for that purpose. Bourne v. Pratt & Whitney Aircraft Corp., Mo.App., 207 S.W.2d 533[14]. That is particularly true when it is considered that defendant used the term "active negligence" in an instruction given at its request and hence was under a duty to offer an instruc-

tion properly defining that term if it considered such a definition necessary. Since no such instruction was offered by defendant, Instruction No. 2 will not be condemned for the reasons here assigned.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.